LOUISA A. FEITH, APPELLANT, v. KRESGE DEPARTMENT STORE CORPORATION, RESPONDENT.

Argued October 17, 1934—Decided January 10, 1935.

For the appellant, *Robert J. McCurrie* (*Wilbur J. Bernard*, of counsel).

For the respondent, *Frederic R. Colie*.

The opinion of the court was delivered by

KAYS, J. The appeal is from a judgment of nonsuit entered in the Supreme Court, and the granting of the nonsuit is the sole ground of appeal. The case was tried before Judge Porter and a jury at the Essex Circuit.

The plaintiff, a widow seventy-two years old at the time of the accident giving rise to this suit, was injured while in the act of entering defendant's store as an intending customer, shortly before noon on March 19th, 1931. The store in question is in Newark, and extends through from its front on Broad street to its rear on Halsey street, where there was an entrance consisting of a revolving door of the usual type, with an ordinary door on each side. The revolving door was in operation. The plaintiff testified that she was unused to that kind of door, but there was nothing to indicate that that fact was known or made known to any agent of the defendant. Plaintiff's son drove her in his automobile to the curb at the Halsey street entrance, stopped there, and she was assisted to alight by a uniformed attendant employed by defendant, escorted by him across the sidewalk, and guided into one of the quadrant compartments of the revolving door. Her son was in a hurry to get back to work, and drove away as soon as his mother had reached the door, so that he saw nothing of the accident. The doorman, or sidewalk attendant, was called and identified by her son. He testified that he was employed at the Halsey street entrance "as a footman," but was not questioned further by either side. There was no testimony describing the accident except that of plaintiff herself in the following language: "Well, my son drove me to Newark, to Kresge's store, and as I was in front of the store there a porter came and helped me out of the car and brought me to the entrance of the store, but I had never been there at that entrance, it was strange to me, I don't know what is the name of the street. *Q.* Halsey street? *A.* Halsey street, that is it. I generally came from Broad street side whenever I went in the store. Well, the porter brought me in there, and there was this new kind of doors, the revolving doors, I wasn't used to them either.

So he brought me just to one spike, I was just between the wheel, he came just into the room after one spike and there he left me. I was standing there, I didn't know what to do, I didn't know which way I had to turn it, and it was not more than a wink of an eye, about, I was standing there when I got a terrible blow on the right side that opened the whole wheel and drove me right through and splashed me onto the marble floor."

It will be observed that there is not a word in this testimony to indicate any definite act by any person which caused plaintiff to be thrown out on the floor. The complaint charged a defective door among other things, but the trial court properly pointed out that there was no testimony of any defective condition. Nor is there testimony of the presence on the scene of any other witness except the footman, and plaintiff's counsel refrained from questioning him about the accident. Plaintiff's testimony may consist of several hypotheses, as for example, that some other customer pushed a wing of the door into her from behind, or that the footman moved it with his hand and moved it too fast, or even that plaintiff herself gave it such a push that it struck her from the rear. But there is nothing that points to any particular hypothesis or tends to raise any particular inference as to what in fact happened as the result of any human agency. As we understand the argument for appellant, defendant is to be charged (a) because it was the duty of the footman to see customers safely through the door. But of this there is no proof whatever; (b) because the plaintiff was decrepit and obviously needed more physical assistance than the average person, and this the footman failed to give. But we fail to find any evidence that plaintiff, if in fact in need of care, either showed it, or that she or her son asked for it. He, indeed, started up his car while his mother was still on the sidewalk. He testified that she "sometimes got a little stiff [so] we decided to take a cane along." But neither he nor she said that she showed stiffness observable by the footman in getting out of the car, or that she used the cane at all. It is suggested that if the footman had not conducted her to

the revolving door, she would have used one of the ordinary doors. We think there is no evidence that she would have done so; but assuming such evidence, negligence of the footman is not to be predicated thereon, particularly as plaintiff expressed no preference so far as appears.

In short, the case is barren of evidence from which negligence may be inferred. There is nothing to show what the duties of the footman were. They may not have extended beyond opening the door of the automobile. They may have extended, perhaps, to escorting the intending customer to the door. That he did. But revolving doors, particularly in winter, are so common that in any ordinary case the presence of an attendant is not to be considered as a legal duty. The case of *Smith* v. *Johnson,* 219 *Mass.* 142; 106 *N. E. Rep.* 604, involved a double swing door. The Supreme Court of Massachusetts ordered judgment for the defendants, saying: "The failure to furnish doorkeepers or attendants in no way contributed to the accident." The same court, in *Buzzell* v. *R. H. White Co.,* 220 *Mass.* 129; 107 *N. E. Rep.* 385, had to do with a revolving door, the plaintiff being injured while passing through it out of the store. In the course of the opinion the court said "there was no more reason for an attendant in case of a revolving door than there was * * * in Smith *v.* Johnson." The court noted the rarity of revolving door cases, and cited *Dolan* v. *Callender Co.,* 26 *R. I.* 198; 58 *Atl. Rep.* 655, where a demurrer to the declaration was sustained, and reference was made to an unreported case of a revolving door in which similar judicial action was taken. The recent case of *Seckler* v. *Pennsylvania Railroad Co.,* 113 *N. J. L.* 299; 174 *Atl. Rep.* 501, in this court is on much the same lines. We concur in the view expressed by the Massachusetts and Rhode Island courts, that there is nothing so inherently dangerous in a revolving door of the usual type as to call for the offices of an attendant to see passengers safely through it; and we repeat that we can find nothing in the evidence to indicate that the footman had any notice that plaintiff either was ignorant of the working of the door, or lame or crippled so as to require particular

assistance; or that the duties of the footman extended to the operation of the door.

The judgment of nonsuit is affirmed.

*For affirmance*—THE CHANCELLOR, LLOYD, CASE, BODINE, DONGES, KAYS, HETFIELD, DEAR, WELLS, JJ.   9.

*For reversal*—THE CHIEF JUSTICE, HEHER, PERSKIE, VAN BUSKIRK, JJ.   4.