ISABELLA MAIN v. MAURICE H. LEHMAN, Appel-
lant.

Division One, June 16, 1922.

1. **NEGLIGENCE: Invitee: Use of Toilet.**  Where the toilet in de-
   fendant's store was allowed to be used by his customers as well as
   his employees, and plaintiff, a customer, asked an employee where
   the customers' toilet was and was told it was on the third floor

and how to reach it, plaintiff was not a mere licensee, but an invitee, and being such the defendant was bound to exercise reasonable care to keep the toilet in a reasonably safe condition for her use.

2. ———: ———: ———: **Failure to Exercise Reasonable Care.** The mere fact that there was a step in the toilet six inches high which the invitee would have to ascend when entering and to descend when leaving was not in itself evidence of a lack of due care on the part of the store-keeper, because such steps are usual in dwellings and stores. Neither can it be said that there was insufficient light in the toilet to enable the invitee, by the use of ordinary care, to avoid falling over the step, where her evidence shows that when the door was closed the light from the adjoining window shown over the open top of the toilet and came down in it sufficiently to enable her to see the upper part of the door, that the toilet seat was so close to the door that she could easily push it ajar with her hand without moving from the seat, and that when she entered the toilet only a minute and half previously she had distinctly seen the platform and step which she knew she would have to descend on leaving the toilet. And such being the facts, although she miscalculated the distance and fell from the six-inch step on leaving the toilet and was injured, the defendant did not fail to exercise the reasonable care for an invitee required by the law.

3. ———: **Care Due Invitee: Known Danger.** The keeper of a store owes to invitees the duty to exercise reasonable care to keep his premises in a reasonably safe condition for their use in the transaction of the business in which they are engaged under the invitation, or to warn them of dangers known to him and not known to them. But where the invitee has full knowledge of the dangers immediately before her injury, and they are as well known to her as to defendant, and are not of themselves dangerous if ordinary care is exercised, she cannot recover damages.

Appeal from Buchanan Circuit Court.—*Hon. Lawrence A. Vories,* Judge.

REVERSED.

*O. C. Mosman* and *Vinton Pike* for appellant.

No reasonable person would have anticipated that anyone observing and knowing the situation as plaintiff did, and using ordinary care, would meet with an ac-

cident in entering or leaving the toilet. Shaw v. Goldman, 116 Mo. App. 332-8; 21 Am. & Eng. Ency. Law, 471; O'Donnell v. Patton, 117 Mo. 122; Brewing Assn. v. Talbot, 141 Mo. 674; Benton v. St. Louis, 248 Mo. 98; State ex rel. v. Ellison, 271 Mo. 463; White v. Berkson, 187 Pac. 670; Carleton v. Iron Co., 99 Mass. 216; Parker v. Pub. Co., 69 Me. 179; Hordes v. Kessner, 159 N. Y. Supp. 891 ; Douglass v. Shepherd, 217 Mass. 127; Larken v. O'Neill, 119 N. Y. 221; Jennings v. Tompkins, 180 Mass. 302; Corbett v. Spanos, 173 Pac. 769; Greenfield v. Miller, 180 N. W. (Wis.) 834. When plaintiff saw the arrangement and condition of the toilet she saw and knew that there would be less light in the toilet after she pulled the door to after her. She knew she "would have to step down" from the platform she saw when she entered and upon which she stepped. By pushing open the door the light would have returned and showed her where to step. Ordinary care required this; but if she would step down in the darkness she should have taken care to find the edge of the step. Parker v. Pub. Co., 69 Me. 179; Clark v. Railroad, 127 Mo. 213; Hogan v. Railway, 150 Mo. 55; ·Zumwalt v. Railroad, 175 Mo. 313; Doerr v. Brewing Assn., 176 Mo. 556; Wharton on Neg. (2 Ed.) sec. 833; Sesler v. Company, 41 S. E. 218; Jones v. Sugar Co., 14 N. Y. Supp. 57. On the contrary, contradicting her own senses, she thought the step was farther out and carelessly took the step on that assumption. Defendant did not create a situation calculated to mislead her. He provided sufficient light to enable anyone to see the platform and its location. She admits this. She admits also that she had in mind she would have to step down as she left the toliet, but says she could not see, because she had pulled the door shut and darkened the place. But the darkness either was not so great as to prevent her from seeing if she had looked, or was great enough to require her to use care in stepping instead of acting upon the thought that the step was where she knew it was not. It did not seem or appear to be "further

out;'' she thought it was further out. Hacker v. Railway, 110 Mo. App. 165; Fowler v. Randall, 99 Mo. App. 414; Brugher v. Buchtenkirch, 167 N. Y. 153; Piper v. Railway, 156 N. Y. 224; Sanderson v. Railway, 192 S. W. 869; Murphey v. Cohen, 223 Mass. 54; Redley v. Nat. Casket Co., 161 N. Y. Supp. 444; Mochiea v. Hayden, 157 N. Y. Supp. 233; Brudie v. Renault, 122 N. Y. Supp. 963; Speck v. Railway, 122 N. W. 497; Bedell v. Berkey, 43 N. W. 308; Massey v. Seller, 77 Pac. 397; Patterson v. Hemenway, 148 Mass. 94; Badger v. Gresham, 35 S. E. 677. The rule upon which plaintiff relies, which has been often quoted and applied in the courts of this State, is expressed thus in Carleton v. Iron & Steel Co., 99 Mass. 216; O'Donnell v. Patton, 117 Mo. 19. Defendant had no reason to anticipate plaintiff was not a reasonably prudent person, and would not take care to avoid injury where no one was injured before. State ex rel. v. Ellison, 271 Mo. 473. The premises were as well known to plaintiff as to defendant. No notice was required.

*Mytton & Parkinson* for respondent.

(1) When the owner or occupant of premises invites persons to use the same in connection with his own benefit, pleasure or convenience, then that person is no longer a bare licensee, but becomes an invitee, and the duty to take ordinary care to prevent his injury is at once raised, and for the breach of that duty an action lies. The invitation may be implied by dedication, or it may arise from known customary use, or from any state of facts upon which it naturally and reasonably arises. Kean v. Schoening, 103 Mo. App. 77; Jacobson v. Simons, 104 N. E. (Mass.) 490; Glascer v. Rothschild, 221 Mo. 180; McCullen v. Fishell Bros. Co., 198 Mo. App. 130; O'Donnell v. Patton, 117 Mo. 13; Applegate v. Railroad, 252 Mo. 173; Moore v. Korte, 77 Mo. App. 500; Hollis v. Merchants' Assn., 205 Mo. 508; Oakley v. Richards, 275 Mo. 276; Reynolds v. John Brod Chemical Co., 192 Ill. App. 157. (2) Every reasonable person maintaining

Main v. Lehman.

a toilet would have anticipated that a toilet construct-
ed with the platform not extending out to the door
of the toilet room when closed, and with the door
extending within two, three or four inches of the
floor would be dark; and that such construction com-
bined with darkness would render it likely that persons
would be injured in leaving the toilet room.    A close
observer entering the toilet for the first time would not
have comprehended that the platform did not extend out
to the line of the door when closed, and would not have
observed on entering the closet with the door open that
it extended to within two, three or four inches of the floor,
and below the elevation of the platform within the closet,
and could not and would not have observed or anticipated
the extent of the darkness within the toilet room when
the door would be closed; and even observing that there
was a platform within the closet, would not comprehend
the danger to be encountered in leaving the closet, by rea-
son of its construction, and the darkness. Hanley v. But-
ler, 167 N. Y. App. 329, 152 N. Y. Supp. 39; Oakley v.
Richards, 275 Mo. 266; Aiken v. Sidney Steel Scraper
Co., 197 Mo. App. 673; Bloomer v. Snellenburg, 225 Pa.
25; Hommell v. Badger State Inv. Co., 166 Wis. 235.

SMALL, C.—Suit for personal injuries from fall-
ing over step in defendant's store by plaintiff who was
shopping therein.

Plaintiff herself testified: Was hurt November 18,
1919.  Went in store to buy goods about nine a. m. Asked
saleslady on second floor where customers' toilet was.
She said on third floor, told me how to get there; went
up in elevator.  Toilet was in room in extreme north-
west corner of third floor.  Toilet partitioned off; window
in west end of room outside of toilet.  Toilet she entered
was immediately north of this window next to the west
wall.  Seat or stool was on platform, six inches higher
than floor.  Cannot tell how far edge of platform was
from door, think about two feet.  Question by plaintiff's

counsel: "If this is a foot rule would that be possibly about a foot? A. Yes, sir." The door into the toilet did not reach the floor, but went below the top of the platform about three inches. When toilet door was closed could not tell how far out edge of platform extended. There was no artificial light in the toilet. When I went in I noticed there was a step there; I thought it came out as far as the door. As I went to leave toilet I went to step out and as I stepped I set my foot to go out and I fell with all my force on this hand. I put my foot out, to step out, to step down. The closet door was closed. I just rose up, just stepped and put my hand out as I stepped and as I stepped I fell forward onto the floor and threw all my weight on this hand. I stepped off from the step, I thought it extended farther out, I stepped over it and it threw me down. I looked as I stepped, but it was so dark I could not tell. I thought the platform went as far as the door. It was so dark at my feet I could not tell. Cross-examination: Had never been in this toilet before. The window is close to the toilet because the toilet door swings back against the window and covers the window. No, did not cover quite all, I suppose. Think platform lacked about two feet of extending to the door; could not see any light on the floor under the door. It was very dark. As I went to leave I stepped and put my hand out at the same time. Door was not fastened; it had a string to it. I held the door shut by holding onto the string. When I let go of string I started to push door. Door did not swing open of its own motion when I let go of string. I just let go and pushed and stepped at same time. I noticed the step there as I went in and closed the door. Door was not closed when I came into the room. As I came in I could see this step. In toilet about a minute and a half. Did not stand there looking down to see how far the step extended. When I got ready to leave I simply took this step and pushed the door open at the same time. I saw the outline where the step was before I opened the door,

but it was so dark I could not tell how far it went out, I supposed it went as far as the door. My neighbor, Mrs. Means, was in the next toilet to me. She went to her mother's beyond Kansas City last Sunday. We had been shopping together. There was a board partition between me and Mrs. Means. Window sill was about two feet above the floor. Cannot tell how much higher top of window was than top of door. I noticed light above. As I stood there I saw the door. I could see, that was above me and it was light. Had something like drab or gray paint on it, could not positively say. I saw string on door as I went in. As I sat on toilet my feet rested on space of about eighteen inches on platform. Could not tell exactly. I could not see under the door. I looked and saw darkness. ''Q. You did that while sitting there? A. The door was close up against it and it was so dark you couldn't tell.'' You can see the step there. While the door was open and I started in I could see plainly enough. I didn't simply forget all about this step when I came out. I thought it extended farther out. I knew I would have to take one step down, but I thought it was out farther than it was.

Miss Lilliam Thomas testified for plaintiff: Used toilet as customer number of times. The toilet door was about a foot from the edge of the platform, which was about six inches higher than the floor. The stool was on the platform and from it to the edge of the platform was about a foot. Door about two inches from floor on west side and sags nearly to the floor on the east. Can't see floor in front of platform sitting on stool (referring to about 9:30 in the morning). Door seven feet high. Partition below window. Window sill $2\frac{1}{2}$ feet above the floor; window reaches to ceiling of room three feet above door and partition. Door not fastened—only a little string. Toilet located in room on third floor right next to window which opened on alley; two-story building across alley; no shades on window. In the afternoon the sun came in there, it being then in the west, and it

would naturally make the light come in through the window down into that closet and make the whole room brighter. In the morning the sun does not strike that west window, you can see the light under the door, but it does not extend back into the toilet room—you can see the light on the floor. After you open the door you can see the stool, the step, and everything plainly, no trouble at all. No top over the toilet.

Inez Osborn, former employee, testified for plaintiff and her testimony corroborated Miss Thomas's as to the location, light, dimensions, measurements, etc., of the toilet and its surroundings.

T. A. Main, plaintiff's son, had seen and examined the toilet in question and described it and the surroundings substantially as Miss Thomas and his mother, except that he said that the door had been raised up several inches the last time he saw it and he described the window as a large window, whereas Miss Thomas said it was an ordinary-size window. He was there also in the afternoon and said that then the sun shines right into the toilet through the window.

The injury to plaintiff consisted of broken and dislocated bones in her right hand, which left it disfigured and much weakened.

On the part of the defendant a number of witnesses testified to the effect that the toilet was abundantly lighted by the window at all times of day, and that they could see to read newspapers at nine a. m. sitting on the toilet seat with the door shut, and that the platform and step-off were also then plainly visible. That the door was about six to eight inches above the floor. The other measurements were substantially as stated by plaintiff's witnesses.

As to the use of toilet by customers defendant's evidence was as follows:

Miss Thomas, one of defendant's employees, said on cross-examination: "Q. This is the toilet the customers use? A. Yes, sir. Q. Provided for them? A.

Yes, that is the one we use.  Q.  You direct the customers?  A.  No, I never use it;  never direct them; have seen them come in;  never happen to be in there when there would be strangers—just the ones that work in the house.  Q.  That is the only one provided for the customers?  A.  It is the only one there.  I don't know whether they allow customers or not.''

Defendant M. H. Lehman testified on that subject on cross-examination:  ''Q.  Is that a ladies' toilet—lady customers?  A.  It is intended for the employees.  Q. And customers when they need it?  A.  I couldn't tell you, for this reason, no lady would come to me to ask to be directed to the toilet.  Q.  It is the only one you provide for your customers?  A.  For our customers? Q.  Yes?  A.  If they use it they could;  I don't send them there.  Q.  They go to the ladies there in the store?  A.  Yes.  Q.  You would not know to what extent they used it otherwise?  A.  No, sir.''

Defendant also introduced in evidence a photograph taken about 3:30 in the afternoon showing the two toilets as defendant's evidence tended to show they existed at the time of plaintiff's injury.  It shows room perfectly light and door in toilet apparently about six inches above floor.

The court gave certain instructions for the plaintiff and also for the defendant, but refused an instruction in the nature of a demurrer to the evidence asked by the defendant.  The jury returned a verdict for plaintiff for $2,500.  Defendant lodged his appeal in the Kansas City Court of Appeals, but that court affirmed the judgment below because the court found the bill of exceptions as shown by the abstract did not appear to be signed by the judge.  Judge TRIMBLE dissented and requested that the cause be certified to this court, which was ordered done, May 23, 1921.

April 13, 1921, appellant filed in the Kansas City Court of Appeals a duly certified transcript showing that the concluding part of the original bill of exceptions was as follows:

"And having written out this, his bill of exceptions, defendant prays that the same may be allowed, signed and enrolled among the records in the cause, which is accordingly done this 8th day of November.

"L. A. Vories,
"Judge of the Circuit Court of
Buchanan County, Division 2."

In this court no further question is raised as to the signing of the bill of exceptions.

I. The first point is whether the plaintiff was an invitee or a mere licensee. The evidence shows she was a customer at defendant's store, and that the toilet in question was allowed to be used by defendant's customers as well as by his employees. She was therefore an invitee, and as such the defendant was bound to exercise reasonable care to keep the toilet in a reasonably safe condition for use, and not simply to refrain from wilfully or recklessly permitting plaintiff to go into danger on his premises, as in the case of a mere licensee. [Glaser v. Rothschild, 221 Mo. 180; Kean v. Schoening, 103 Mo. App. 77; Oakley v. Richards, 275 Mo. 276.]

II. Was there substantial evidence before the jury tending to prove that the defendant failed to exercise the reasonable care for plaintiff's protection as an invitee required by the law? We think there was not. The law did not make the defendant an insurer of plaintiff against injury. Defendant's duty was to exercise reasonable care to furnish plaintiff a reasonably safe toilet. The mere fact that there was a step in the toilet six inches high which plaintiff would have to ascend and descend was not in itself evidence of a want of due care on defendant's part, because such steps are usual in dwellings and store buildings. [Oakley v. Richards, 275 Mo. 276, hereafter quoted.] But it is said there was insufficient light in the toilet at the time of day plaintiff was permitted to use it to enable her to see and avoid falling over the step, by the

Main v. Lehman.

use of ordinary care, and that such circumstances tended
to show negligence on defendant's part under all the
facts in this case.   We cannot agree to this statement.
Plaintiff's evidence shows that when the door was closed
the light from the adjoining window shone over the
open top of the toilet and came down into it sufficiently
to enable the plaintiff to see the upper part of the door,
and that the toilet seat was so close to the door—within
two feet of it—that she could easily push the door ajar
with her hand, without moving from the seat or platform,
and thus admit abundant light from the unshaded win-
dow, immediately adjoining the door, to enable her to
see plainly the floor and step in front of her—if it was
so dark when the door was closed that she could not see
them.   She was in the toilet but a minute and a half.
She had just entered through the open door, and had seen
distinctly the platform and step which she says she knew
she would have to descend in leaving the toilet.   But,
instead of pushing the door open first so she could see
better, she stepped forward in the dark at the same time
she opened the door, and fell, because she miscalculated
the distance of the step from the door, although she had
just seen it a minute and a half previously.   This was not
the fault of the defendant.   Suppose at the time defend-
ant's employee, in answer to her question as to where the
toilet was located, had not only told her that it was on
the third floor, but had informed her of the step in the
toilet which she would have to ascend and descend, would
not the defendant have performed his whole duty under
the law?   We think so.   When plaintiff reached the toilet
with the open door, she admits she saw with her own
eyes the step in the toilet and which she knew she would
have to ascend and descend.   Defendant thus gave plain-
tiff, and plaintiff had, ample notice of the step and its
location and the whole situation just a moment before
the injury.

As to the authorities cited by respondent:   In
O'Donnell v. Patton, 117 Mo. 13, a pile of shavings and

sawdust on the defendant's premises fell upon and injured the plaintiff. The court there laid down the rule as to invitees, as follows:

"II.   The premises in the occupancy and under the control of defendant were used by him as a place for the transaction of his business, and plaintiff entered thereon as a customer under an implied, if not express, invitation to do so. Under these circumstances, plaintiff owed to defendant the duty of the exercise of reasonable care to keep his premises in a condition reasonably safe for the use of plaintiff in the transaction of the business in which he was engaged under such invitation, *or to warn him of dangers known to him and unknown to plaintiff*.

"The duty and liability of the proprietor of business premises to his customers in such cases are stated by Justice GRAY in a Massachusetts case as follows: 'The owner or occupant of land is liable in damages to those coming to it, using due care, at his invitation or inducement, express or implied, on any business to be transacted with or permitted by him, for an injury occasioned by the unsafe condition of the land or of the access to it, *which is known to him and not to them, and which he has negligently suffered to exist and has given them no notice of*.' [Carleton v. Iron & Steel Co., 99 Mass. 216; see also Welch v. McAllister, 15 Mo. App. 492, for a review of the authorities; Beach on Contributory Negligence, sec. 51.]"   (Italics ours.)

In Oakley v. Richards, 275 Mo. 267, the plaintiff had no previous knowledge of the step and was unable to see it on account of darkness. In that case the court says, at page 276:

"I.   It was the duty of appellants to use ordinary care to see that the place to which they invited their patrons was reasonably safe for use for the purposes for which it was designed. [Hollis v. Merchants' Assn., 205 Mo. l. c. 520.]   The jury was warranted in finding that respondent's fall was due to her inability to see the step-off on account of the darkness in the theater. 'It

Main v. Lehman.

is a matter of common knowledge' that a four-inch depression in a floor 'is sufficient to cause one to fall' who, *in the absence of light and knowledge of its presence,* steps into or upon the edge of it. [New Theater Co. v. Hartlove, 123 Md. 1. c. 86.] *It is not contended the presence of the step-off, alone, was negligence.* It was the absence of light sufficient to enable respondent to see the depression which brought about her fall. The evidence was sufficient to warrant a finding of negligence. [Valentine Co. v. Sloan, 53 Ind. App. 71; New Theater Co. v. Hartlove, 123 Md., supra; Andre v. Mertens, 88 N. J. L. 628; Marwedel v. Cook, 154 Mass. 235; Little v. Holyoke, 177 Mass. 116; Faxon v. Butler, 206 Mass. 504; Marston v. Reynolds, 211 Mass. 592; Nephler v. Woodward, 200 Mo. 179; Camp v. Wood, 76 N. Y. 95; Currier v. Music Hall, 135 Mass. 414.] Appellants rely upon cases holding *that steps and stairways of ordinary construction are reasonably safe when used as means of overcoming differences in level.* They do not decide the question in this case. [Little v. Holyoke, 177 Mass. 116.] Peck v. Yale Amusement Co., 195 S. W. 1033, is cited. In that case the evidence failed to show what caused the injury. Mrs. Peck was familiar with the stairway, and the light was like that usually found in moving-picture theaters. *In attempting to use a properly constructed stairway of the presence of which she had previous knowledge, she fell, and from her evidence 'no court could say just what did cause her fall.' "* (Italics ours.)

In Glaser v. Rothschild, 221 Mo. 180, the plaintiff had no previous knowledge and could not see the pit into which she fell, and it had been previously recognized by the defendants as dangerous. In the case at bar, there is no evidence that the defendant had previously known or regarded the step as dangerous or that he knew or could have known any more in regard to its character as being dangerous or otherwise than by seeing it and observing its location and surroundings, which the plaintiff had an opportunity to and did do at the time she entered the toilet.

Hollis v. Merchants' Assn., 205 Mo. 520, was a case where plaintiff was injured while riding on "something similar to a merry-go-round" and the facts have no likeness to those in this case.

Kean v. Schoening, 103 Mo. App. 77, is where plaintiff, a customer in defendant's store, backed into an open trap-door in the floor, which she had just passed over when closed, and which was afterwards opened, while she was engaged in making her purchases, without notice to her, and she fell into it not knowing it was open.

The same thing is true in substance as to McCullen v. Fishell Bros. Amusement Co., 198 Mo. App. 130—the injured plaintiff had no previous knowledge or notice of the open door into which he fell. Applegate v. Railroad, 252 Mo. 173, has no direct bearing on the case. Moore v. Korte, 77 Mo. App. 500, is another case of injury by falling into an open trap-door in a store of which plaintiff had no previous knowledge or notice.

No case is cited from this or any other jurisdiction, and we have been unable to find any, where the invitee had full knowledge and information immediately before his or her injury of the step or other obstruction complained of, in which defendant was held guilty of negligence or liable for the plaintiff's injury.

We think the demurrer to the evidence should have been sustained. The judgment of the court below is therefore reversed. *Ragland, C.,* concurs; *Brown, C.,* no sitting.

PER CURIAM:—The foregoing opinion by SMALL, C., is hereby adopted as the opinion of the court. *Graves, James T. Blair* and *Elder, JJ.,* concur.