## Moss v. Blue Ridge Transportation Co. et al.

Before Hudson, P. J., and Cottom and Dumbauld, JJ.

*Goldstein & Goldstein, J. P. Bramhall,* and *John Duggan, Jr.,* for plaintiff.

*E. J. McDaniel, William A. Challener,* and *Rufus S. Marriner,* for defendants.

HUDSON, P. J., February 16, 1937.—This is an action of trespass in which the jury found against the Blue Ridge Transportation Company, defendant, and for the West Penn Railways Company, the other defendant. A motion for judgment n. o. v. was filed by the transportation company, and the case was placed upon the argument list and heard by the court in banc.

There were two reasons argued and pressed why the motion should be allowed: First, there was no negligence shown on the part of the transportation company; second, the court erred in refusing defendant's second point, which was: "Under all the evidence appearing in this case, plaintiff was guilty of contributory negligence as a matter of law."

As we view it, it is only necessary to discuss the second reason assigned.

It appeared from the testimony that the West Penn Railways Company owned and operated a two-story brick building which fronts south on Penn Street, Uniontown. The building was erected in 1930 and is of modern construction. It was used partly by both defendants for the accommodation of their passengers. The waiting room is on the first floor and on the west side of the building. The ladies' rest room is located on the second floor, northwest corner of the building, and as the accident occurred in this room we think that a minute description of it will be helpful in deciding the questions involved.

The room, a corner one, is rectangular, running north and south 20 feet 9 inches, and is 16 feet 3 inches in width, and the ceiling is 10 feet in height. The unshaded windows, two on the north and three on the west, each 3 feet 6 inches by 4 feet, furnish natural light for the room, and four ceiling lights of 200 watts each furnish the artificial light. As there are no buildings on the west or north there was nothing to obstruct the light which entered the windows of the rest room.

The toilet enclosures or stalls, three in number, stood on a raised platform, six inches in height, were against

the south side of the room, and faced north. The platform, the baseboard, and the floor are of terrazzo construction. The wainscoting is of buff tile and extended to a height of 5 feet 3 inches from the floor and to the lower sash of the windows. The toilet stalls were four feet in depth and three feet in width. The platform upon which they stood was of the same construction as the floor. The doors were 4 feet 6 inches in height, opened outward, and were eight inches above the platform. If the doors had been extended to the platform the space left on the platform on the outside in front would have approximated three inches in width. Two photographs of the room show just how the toilets and windows are located.

It appeared that plaintiff, Mrs. Elizabeth Moss, of Washington, D. C., was a passenger upon a bus of the transportation company, which conveyed her from Washington to Uniontown on October 24, 1933. Between three and four o'clock in the afternoon she arrived safely at the West Penn Terminal, and after using a public telephone in the building inquired of someone as to the location of a ladies' toilet and was told that it was on the second floor.

In getting to the ladies' rest room it was necessary for her to use the stairway, turn to her right, enter the doorway of the rest room, and turn to her left to the toilets. She found that the toilets were closed with coin locks, and that it was necessary for her to have a nickel to open the door. Not having any change, she went downstairs, got a nickel, came back immediately, inserted the coin in the lock, opened the door toward her, stepped upon the platform and closed the door behind her. In a minute or two she stood up, adjusted her clothing, turned the knob, opened the door outward, stepped out and fell, seriously injuring herself.

As her knowledge of the toilet, and what she did immediately prior to and at the time of receiving her injuries, is the important part of this case, we will quote from her testimony:

"Q. Now then, when you went to leave the toilet on that afternoon, just tell his Honor and the jury what you did?

"A. Well, I fell immediately as I stepped out.

"Q. Well, what did you do first before you stepped out?

"A. Well, in the toilet I got up and adjusted my clothing.

"Q. Did you or did you not open the door?

"A. Oh, yes, of course I opened the door outward and made a step.

"Q. And what happened?

"A. I landed right on—it looked like marble—marble floor—composition it was.

"Q. Now then, can you tell us just how you fell? By that I mean what part of your body struck the floor as you fell?

"A. Well, I fell forward. I didn't fall backward. I fell right forward, and I must of course struck this hip first before the balance of my body.

"Q. Then you opened the door outward?

"A.  Yes, sir.

"Q. Did you forget about the step there?

"A. Well, if I didn't forget about it, it wasn't noticeable—the step was not noticeable.

"Q. You say you did not forget about the step?

"A. Well, I really don't recall whether I can say I forgot about the step or whether it was so dark I didn't notice how far down it was.

"Q. Well, now . . .

"A. I really didn't have time to think about the step.

"Q. I see. I see. Now, I would like to be clear about that, if you forgot about it?

"A. No, I couldn't have forgotten about it.

"Q. Then you knew it was there, didn't you?

"A. Yes.

"Q. And you knew it was about six or seven inches in height?

"A. I don't know that positively.

"Q. But that is your best estimate of the height, isn't it?

"A. Yes, six or eight inches, because I remember the effort in stepping up.

"Q. That would make you remember then that the step was there, wouldn't it?

"A. Yes; yes.

"Q. And it would make you remember that the step was there on this occasion, wouldn't it? It would make you remember?

"A. Yes.

"Q. And you stepped out just as if it was not there, didn't you?

"A. Exactly. It was the first step that I made."

When asked about the lights in the room, Mrs. Moss said that she could not say whether the lights were on or not, but that the room was dark. The janitor of the building, called as a witness by plaintiff, testified that all four lights in the ceiling were burning. There was sufficient light in the room for Mrs. Moss to see the words "deposit a nickel", and also to see the small hole in the lock in which to place the coin. The photograph exhibits show the room to be well lighted.

Does the testimony on the part of plaintiff, considered from a standpoint most advantageous to her, show her to be guilty of contributory negligence as a matter of law? We think that it does.

The courts hold that the law as to contributory negligence is simply this: Where a person seeks to recover damages for injuries alleged to have been caused by the negligence of another, he cannot recover any compensation for his injuries if he, by his own negligence, contributed in any degree in causing the injuries complained of. If anything that he did or anything that he failed to do that he ought to have done contributed to the injuries of which he complains, he cannot recover, because he is guilty of contributory negligence.

What did plaintiff fail to do in this case that she ought to have done for her own safety? Mrs. Moss, within a few minutes time, had been to the toilet stalls twice. She had seen the platform, had seen the step, knew that it was necessary to take a step up in entering the toilet and a step down in leaving it. If she had used her eyes or her memory the accident would not have happened. In walking out of the toilet that afternoon plaintiff's field of vision was not just ahead of her and on a level with her eyes, but was to her right, to her left, at her feet, and above her head. If she had used her senses the accident would not have happened. If danger can be seen a person must look; if it can be heard he must listen. At all times he must use his faculties so as to avoid danger if he can reasonably do so.

There is a line of negligence cases in this State which hold that where a pedestrian is struck by a moving vehicle which he could have seen and avoided by looking he cannot recover, being barred on account of his own negligence. There is also a line of negligence cases which hold that a customer in a store who falls through an open trap door, or an open elevator shaft, and so forth, can recover. The law is so well settled in the State that it is not necessary to cite cases to sustain any of the above propositions.

In the instant case we think that the principles of law as set forth in the following cases sustain our position:

In the case of Iams v. Hazel-Atlas Glass Co., 251 Pa. 439, an employe of defendant company working upon a machine and standing upon a movable platform, through his failure properly to adjust it, in stepping backward fell through an opening and injured himself. It was held that he could not recover compensation for his injuries. The court said, at page 444:

"It is no less clear upon the admitted facts of the case that the accident from which plaintiff suffered was in consequence of his own negligence. He has shown no excuse whatever for his attempting to step backward

from the platform on which he was standing to reach the bridge a foot and a half below the platform. In doing so he voluntarily and deliberately denied himself the use of his eyes. Whether he saw or could have seen the open space into which he afterwards fell as he mounted to the machine platform, may be waived. If he did see it, then in stepping backwards to reach the bridge with the opening exposed he was attempting a reckless adventure; if he did not see it in getting upon the platform of the machine, it was, notwithstanding, his duty to exercise ordinary prudence in descending. Ordinary prudence cannot be affirmed of one who deliberately and from choice walks backward and meets with a fall. We hold the ordinary pedestrian to the duty of using his eyes when he goes upon the highway. Why should not like duty be required of one in stepping directly down from a place he has been occupying to a level eighteen inches immediately below? The evidence supports a plain and unmistakable inference that had this plaintiff been looking in the direction he was stepping he could have avoided the accident."

A woman who, in broad daylight, falls on account of a depression in a sidewalk where there is nothing to prevent her from seeing it cannot recover damages against the city, and it was so held in Lerner v. City of Philadelphia, 221 Pa. 294. Mr. Justice Stewart, speaking for the court, said at page 295:

"When one abandons the use of his natural senses for the time being, and chooses to walk over a pavement by faith exclusively, and is injured because of some defect in the pavement, he has only himself to blame. . . . When the accident occurs in broad daylight, in consequence of an open and exposed defect in the sidewalk, the burden rests upon the party complaining to show conditions outside of himself which prevented him seeing the defect, or which would excuse his failure to observe it. If such conditions exist, there is excuse for walking by faith. When they do not exist, the law charges the party with failure

to do what was required of him. And that is this case. The accident occurred at half past four o'clock in the afternoon of an April day. The defect in the pavement was the displacement of some bricks. Into the depression caused by this displacement plaintiff stepped, with the result that she fell and injured herself. In bringing her action she assumed the burden of exhibiting a case clear of contributory negligence. Having testified that she stepped into the depression without having observed it, and having shown conditions which should have been sufficient, nothing intervening, to secure one exercising ordinary care from such accident, she would be entitled to recover only as she explained in a way consistent with ordinary care on her part, how and why she failed to see what was directly before her. Failing in this, it could not be said that her injury resulted exclusively from the defendant's negligence."

In Main v. Lehman, 294 Mo. 579, 243 S. W. 91, it was held that a customer who fell while leaving the toilet in a store could not recover. The facts in this case are very similar to the instant case. The court said, at page 588:

"Defendant's duty was to exercise reasonable care to furnish plaintiff a reasonably safe toilet. The mere fact that there was a step in the toilet six inches high which plaintiff would have to ascend and descend was not in itself evidence of a want of due care on defendant's part, because such steps are usual in dwellings and store buildings. [Oakley v. Richards, 275 Mo. 276, hereafter quoted.] But it is said there was insufficient light in the toilet at the time of day plaintiff was permitted to use it to enable her to see and avoid falling over the step, by the use of ordinary care, and that such circumstance tended to show negligence on defendant's part under all the facts in this case. We cannot agree to this statement. Plaintiff's evidence shows that when the door was closed the light from the adjoining window shone over the open top of the toilet and came down into it sufficiently to enable the plaintiff to see the upper part of the door, and that

the toilet seat was so close to the door—within two feet of it—that she could easily push the door ajar with her hand, without moving from the seat or platform, and thus admit abundant light from the unshaded window, immediately adjoining the door, to enable her to see plainly the floor and step in front of her—if it was so dark when the door was closed that she could not see them. She was in the toilet but a minute and a half. She had just entered through the open door, and had seen distinctly the platform and step which she says she knew she would have to descend in leaving the toilet. But, instead of pushing the door open first so she could see better, she stepped forward in the dark at the same time she opened the door, and fell, because she miscalculated the distance of the step from the door, although she had just seen it a minute and a half previously. This was not the fault of the defendant. Suppose at the time defendant's employee, in answer to her question as to where the toilet was located, had not only told her that it was on the third floor, but had informed her of the step in the toilet which she would have to ascend and descend, would not the defendant have performed his whole duty under the law? We think so. When plaintiff reached the toilet with the open door, she admits she saw with her own eyes the step in the toilet and which she knew she would have to ascend and descend. Defendant thus gave plaintiff, and plaintiff had, ample notice of the step and its location and the whole situation just a moment before the injury."

In Haddon v. Snellenburg et al., 293 Pa. 333, a lady customer in defendant's store fell while walking along a balcony leading to a washroom. Her fall was caused by a small step, six inches in height, which led from one floor to another and which she did not see. There was nothing in plaintiff's testimony to show that the balcony was dark, improperly lighted, or that artificial light was required. The court said, at page 337:

"There is no evidence to show lack of either daylight or artificial light. Unless we hold defendant was an in-

surer of the safety of its invitees, we must conclude plaintiff did not make out a case, as there is not a scintilla of evidence to establish negligence.  The statement that there was nothing to indicate the step might refer to many things, some of which clearly would not be evidence of negligence: McAvoy v. Kromer, 277 Pa. 196, 198; Propert v. Flanagan, 277 Pa. 145.  The case is ruled by the principles set forth in Chapman v. Clothier, 274 Pa. 394.  It cannot be likened to those involving open elevator shafts, hatchways or obstructions in an aisle.  In the latter situation, we do not deal with steps normally appearing in construction."

In an action of negligence it is plaintiff's duty to make out a case free from contributory negligence.  This plaintiff has not done.  We are of the opinion that plaintiff, as a matter of law, was guilty of negligence which contributed to her injury, and that she cannot recover in this action.

### Order

And now, February 16, 1937, the motion for judgment n. o. v. is allowed, and upon payment of the jury fee the prothonotary is directed to enter judgment for the Blue Ridge Transportation Company, defendant.

DUMBAULD, J., dissents.