147 P.2d 359

SEAL et al. v. SAFEWAY STORES, Inc.

No. 4806.

Supreme Court of New Mexico.

March 15, 1944.

Rodey, Dickason & Sloan, of Albuquerque, for appellants.

W. A. Keleher and A. H. McLeod, both of Albuquerque, for appellee.

MABRY, Justice.

Appellants Seal and husband, hereinafter to be referred to as plaintiffs (or plaintiff when referring to Mrs. Seal only), brought suit against Safeway Stores, Inc., hereinafter to be referred to as defendant, for personal injuries suffered by plaintiff as a business visitor upon the store premises of defendant. At the close of plaintiff's case, the trial court directed a verdict in favor of defendant, a judgment was · entered thereupon and plaintiffs appeal.

The review here sought is primarily to obtain a review of the trial court's decision that the evidence of negligence on the part of defendant was insufficient to go to the jury. In addition to this principal issue, plaintiffs have assigned error to certain rulings of the court as to the admissibility of some evidence offered on behalf of plaintiffs. The case is here upon a diminished record, at plaintiff's request, eliminating matters not pertinent to the issues above mentioned, and the recapitulation of

the facts is likewise limited and goes only to such issues.

■ Counsel for plaintiffs have, in their able brief, fairly and fully set out the evidence, naturally in an aspect most favorable to them; but it is in this favorable light that the evidence must be appraised. Mesich v. Board of County Com'rs, etc., 46 N. M. 412, 129 P.2d 974.

The plaintiff, a young matron, conducts a pie manufacturing business in her home in Albuquerque. She makes purchases from various grocery stores of supplies for her pie business and for her household. On the afternoon of March 13, 1942, in broad daylight, she went to the defendant's store on North Second Street in Albuquerque for this purpose. She had been in this store several times before. She purchased a sizable quantity of groceries and these were placed in a large paper sack by the defendant's agent, a clerk. The bag's size is indicated by the fact that when the plaintiff held it in both arms before her, the top of it came to her chin.

The plaintiff picked up the sack in this manner and proceeded to leave the store, intending to return to her car. Thus burdened, and without turning her head to look around the sack, she could not see where she was placing her feet in walking. In addition to the limitation of her range of vision caused by the sack of groceries, plaintiff states that as she walked toward the parking space she did not notice the ground particularly because she had to look out for the traffic of cars of other customers, coming on and leaving the customary parking space in front of the store. Some of these cars parked very close to the store. She was looking "where she was going", and not at her feet.

Outside the door, and some 12 to 15 feet therefrom and in the direction in which the plaintiff was then traveling, there is a 4 inch change of level as one steps down from the walk to the parking area. The defendant's store is set back a distance of 40 feet or so from the inner edge of the public sidewalk. All of the area between the public sidewalk and the store front, except a 4 foot strip (a private, or store, walk), adjacent to the front and side of the store building is on the same level as the public sidewalk and is used as a parking area for the store's patrons. The 4 foot strip referred to is on the same level as the floor of the store and is about three and one-half to four inches above the level of the parking area. In leaving the store and going to a parked car in front thereof, one encounters no change of level just at the door of the store; but about 4 feet outside the door there is a change of level, of about 4 inches, to the level of the front parking area. The higher strip of 4 feet along the front of the building, and the parking area are both paved with cement of the same color. However, plaintiff did not fall exactly in front of the store but rather at the south end of the 4 foot wide walk, or strip, running the length of the store, and at the place where it drops some 3 or 4 inches to the paved parking level at the southeast corner of the store. She had

thus walked along the 4 foot wide paved walk, with its 3 or 4 inch higher elevation, after leaving the front door entrance for some 10 or 12 feet before encountering at the corner the slight drop in elevation, where she fell.

When the plaintiff, burdened as described, reached the edge, or end, of this change of level, she did not realize, or had forgotten, it was there. In stepping, her right foot came down with the back of the foot on the higher level and the front overhanging the edge. This caused her to lose her footing and she fell to the ground, causing injury to her hands, ankle, knees and back. She was suffering from some prior injury to her foot which perhaps made her less foot-sure and perhaps left her with a weak foot and ankle, if that should be important.

Two other customers nearby helped her to her feet; the defendant's store manager, one Tixier, was summoned. He sent the plaintiff to a doctor.

As a result of the accident, the plaintiff sustained serious personal injuries. It is unnecessary to describe them fully for reasons hereinbefore noted.

After the accident, in conversing with the said manager, plaintiff's husband (also a party plaintiff here) was assured by him that the defendant would take care of "all the expenses", "everything connected with the accident".

Going to the question presented by two of the assignments of error, whether certain evidence offered on the part of plaintiffs was properly excluded, it is to be noticed that at the trial her counsel asked her whether the defendant's employees had offered to carry her groceries to her car for her after they had been purchased and wrapped. This was objected to as leading and subsequently on the ground that it was immaterial because the defendant was under no duty to carry its customers' bundles, at least without request. In each instance, the Court sustained the objection subject to the plaintiffs' exception. A negative answer which had been given was stricken.

At another point, plaintiff's counsel asked her whether the manager of the defendant's store had advised her, at the time of her fall, that other persons had fallen at the same place. This was objected to as irrelevant and the objection was sustained. This evidence, it was stated by plaintiffs' counsel, was offered to prove both that the step was dangerous and that the defendant company had notice of this fact. Due offer of proof was made that the defendant's store manager stated at the time that a number of ladies had previously fallen on the step where the plaintiff fell and while the step was in the same condition.

We are of the opinion that the trial court properly directed a verdict for defendant. Nothing was shown by the evidence to justify a verdict of negligence. Plaintiff had visited the store many times before and must have been somewhat familiar with the lay-out of the place, which we cannot say was unusual or that it pre-

sented anything of a trap for business patrons, certainly not in broad daylight.

A careful examination of the cases cited and relied upon by plaintiff in their able brief persuades us that such cases are not in point upon the particular and narrow question upon which this case turns. There is here no example of an unusual change in elevation, or one at a place not to be expected at such place of business where, as here, extensive parking facilities are employed on both sides of the building. We have no situation presenting a rise in a circular step elevation with the danger accentuated by either too much light in the wrong place and/or too little where it could have afforded protection, as in Snodgrass v. Turner Tourists Hotels, 45 N.M. 50, 109 P. 2d 775, cited and relied upon.

Counsel for plaintiff, if we correctly appraise their position, concede it to be a well established rule of law that it is not negligence to maintain, under appropriate circumstances, different levels in approaches to such places of business, or even within such stores; and they are correct in this assumption. The rule is very well established both as to change of elevations and use of stairways. See Watkins v. Piggly Wiggly Bird Co., 8 Cir., 31 F.2d 889; Boyle v. Preketes, 262 Mich. 629, 247 N.W. 763; Albachten v. Golden Rule, 135 Minn. 381, 160 N.W. 1012; Dickson v. Emporium Merc. Co., 193 Minn. 629, 259 N.W. 375; Haddon v. Snellenburg, 293 Pa. 333, 143 A. 8; Main v. Lehman, 294 Mo. 579, 243 S.W. 91; Matson v. Tip Top Groc. Co., 151 Fla. 247, 9 So.2d 366.

However, plaintiffs seem to base their claim of negligence on the particular manner of construction of the parking space and slight elevation therefrom leading to the store entrance, as this was to be used by a customer walking "where she could not see". Exhibits in the form of photographs are before us. This amplifies and makes more certain some of the testimony regarding construction and location. From these photographs, noticed in connection with the evidence of plaintiff, it must be said, as a matter of law, that the entrance to and from the store as it related to the approach to the parking space employed by plaintiff, was not negligently constructed or maintained.

The drop in elevation of some 3 or 4 inches from the paved walk to the paved parking space, where plaintiff was walking at the time of the accident, cannot be said to present a hidden or concealed danger for any person using it in broad daylight especially, and keeping a reasonable watch as to where he is walking, and with no unreasonable distractions. Certainly plaintiff, upon entering or leaving a store of this character, and undertaking to walk through and upon the parking grounds, must take notice that such changes in elevations are not uncommon and are to be expected.

Likewise she is not to be absolved from the exercise of reasonable watchfulness as to where she is placing her feet simply because she is carrying a large bundle of groceries which, would ordinarily, and without change of position of the bun-

dle, or of her face, obscure her view of her feet.

■ There is no showing that the management of defendant company was required to carry bundles for patrons, or that patrons were themselves required to carry them in such a way that they could not see in the direction in which they were going; and it is not enough for her to say, or for us to assume, that she must, of necessity, keep watch for parked cars coming into and leaving the parking space adjoining the store at the time she was leaving with the large and cumbersome bundle. That is no more than ordinary risk to be taken under this and like circumstances.

If it could be said that negligence could be charged to defendant in the maintenance of this particular facility of ingress and egress, it would be difficult to imagine a case where different elevations about store entrances could be reasonably employed without incurring liability for negligence.

It was said in Boyle v. Preketes, supra, that under the circumstances of that case, falling down a stairs was an ordinary accident, imputed to sufferer's carelessness or misfortune, there being present no question of concealed defect. And in Garrett v. W. S. Butterfield Theatres, Inc., 261 Mich. 262, 246 N.W. 57, 58, it was stated:

"Different floor levels in private and public buildings, connected by steps, are so common that the possibility of their presence is anticipated by prudent persons. The construction is not negligent unless, by its character, location or surrounding conditions, a reasonably prudent person would not be likely to expect a step or see it. * * * The situation contained no element of a trap. A reasonably prudent person, *watching where he is going,* would have seen the step. Defendant is not under legal duty to prevent careless persons from hurting themselves." (Emphasis ours).

And, in Matson v. Tip Top Grocery Co., supra [151 Fla. 247, 9 So.2d 368], it was observed that it is common knowledge that there are steps and uneven floor levels in many public places. "Such construction, when within reason, is not a breach of duty in the sense of failure to use due care for the safety of those invited upon the premises", the Court there said.

■ Whatever the manager might have said to the husband of the injured patron about others having fallen at the same place could not have been pertinent here, absent a showing, as here, that the manager had authority to bind defendant by any such admission. And, likewise, it becomes unimportant to know whether any employee offered to carry for her to the car the sack of merchandise, absent any proof that such services were required of defendant, even if that could make a difference, which question we need not decide.

In view of the disposition which we make of the principal and controlling issue in the case, in holding, as a matter of law, that no negligence has been shown in the maintenance of the facility complained of, it becomes unimportant, under the circum-

stances, for us to decide any additional questions here raised going to the refusal to admit certain proffered testimony.

Finding no error the judgment is affirmed, and it is so ordered.

SADLER, C. J., and BICKLEY, BRICE, and THREET, JJ., concur.