155 P.2d 138

**DOMINGUEZ v. SOUTHWESTERN GREY-HOUND LINES, Inc.**

No. 4835.

Supreme Court of New Mexico.

Jan. 16, 1945.

Iden, Adams & Johnson, of Albuquerque, for appellant.

Carl H. Gilbert, of Santa Fe, and Arthur Livingston, of Los Angeles, Cal., for appellee.

MABRY, Justice.

Plaintiff-appellee Dominguez brought suit and, upon trial to jury, recovered from defendant-appellant judgment in the sum of $5,000 for personal injuries allegedly suffered when she stumbled over or at a step at the entrance to appellant's bus station at Santa Fe. The negligence charged against appellant was that of maintaining a step one and three-fourths inches in height at the immediate front door entrance to the station. Appellant denied the allegation of negligence and pleaded contributory negligence on the part of the appellee.

The appellee, a woman sixty-four years of age, weighing two hundred eighty-five pounds, went to appellant's bus station in Santa Fe for the purpose of taking a bus to Albuquerque. There was a small step some one and three-fourths inches in height at the entrance to the station and almost flush with the outside door jamb. As she went out of the station after purchasing her ticket, appellee stumbled on this step, or exit, injuring her ankle. She then got on a bus for Albuquerque. After arriving there she complained of her injury to one of the officials at the Albuquerque station, who sent her to the Lovelace Clinic where her injured ankle was treated and an X-ray taken. She suffered a great deal from the ankle thereafter, and was hospitalized for some weeks, incurring considerable expense. Appellee walked into the station over the same step that she allegedly stumbled over coming out, but she did not see the step either time. She was looking straight ahead, "following the crowd".

There are numerous assignments of error and these are argued under five points, as follows: (1) The court erred in admitting in evidence Plaintiff's Exhibit No. 3 and the testimony of the witness Dr. William Randolph Lovelace relative thereto; (2) there is not sufficient substantial evidence to sustain the verdict and judgment; (3) the court erred in giving instruction No. 12 to the jury; (4) the court erred in refusing appellant's requested instruction No. 2; (5) the court erred in overruling appellant's motion for a new trial.

It might be said that under the evidence much doubt could be entertained as to whether appellee was in fact injured by any accident at the step. She had been suffering for a long time from arthritis in the limb and ankle of which she complains. But, since the question of liability is to be resolved by the conclusion we reach under another assignment made and point urged, the question whether accidental injury was suffered need not be further noticed.

[1] Under our view of the case we need consider only point 2, which goes to the question whether there be substantial evidence upon which to rest the verdict and judgment. Appellant's case must stand or fall upon the answer to the query whether

a jury may say that it is negligence, under the circumstances of this case, to maintain a step, or door sill, one and three-fourths inches high at the entrance to the station. That is to say, should not the court itself have resolved the question and held as a matter of law that no negligence was shown. We believe the question should have been so resolved; that it was not a jury question.

The alleged accident happened in broad daylight and there is no claim, or showing, that there was improper lighting, any foreign substance on or near the step, or other circumstance which could have been considered as increasing the hazard to appellee or others using the entrance, over and above the very nature of the structure itself. There is no showing that appellee could not have seen the step had she been looking where she was stepping upon leaving the station; or that the crowd of which she speaks as employing the door passage about this time actually obscured her vision or crowded her in the passage at the time, even if that would have been important.

We had much the same situation in Seal et al. v. Safeway Stores, Inc., 48 N.M. 200, 147 P.2d 359, 361, a case recently decided. That was a case where a customer sought to recover of the owner of the premises for alleged negligence in maintaining outside the door entrance, and some twelve or fifteen feet therefrom, a three or four inch change of level where one steps down from the private walk on the premises to a parking area provided for the convenience of customers with cars. Plaintiff in that case appealed from a judgment following an instructed verdict for defendant, the company. We there said:

"The drop in elevation of some 3 or 4 inches from the paved walk to the paved parking space, where plaintiff was walking at the time of the accident, cannot be said to present a hidden or concealed danger for any person using it in broad daylight especially, and keeping a reasonable watch as to where he is walking, and with no unreasonable distractions. Certainly plaintiff, upon entering or leaving a store of this character, and undertaking to walk through and upon the parking grounds, must take notice that such changes in elevations are not uncommon and are to be expected.

"Likewise she is not to be absolved from the exercise of reasonable watchfulness as to where she is placing her feet simply because she is carrying a large bundle of groceries which, would ordinarily, and without change of position of the bundle, or of her face, obscure her view of her feet."

Certainly there is presented here no less a question of nonnegligence as a matter of law than was before us in the Seal case. If it can be said that the maintenance of a step-down, or change in walk elevation, of three to four inches, under the circumstances of that case, would not present a case for the jury—a question whether or not it constituted negligence on the part of the one maintaining it—it certainly could

not be said that the circumstances of the case before us do.

Appellee weighed approximately two hundred eighty-five pounds at the time of the accident. The doorway in question was of the average size and, obviously, no one but appellee could have been using it at the time. This drop in elevation occurred immediately outside the door and probably within two or three inches of the outside of what might be called the door sill. In fact this higher elevation might be referred to as a door sill. No particular reason can be gathered from the record for the maintenance of this slight drop from the inside floor elevation. It might have been that it was maintained as it was for the purpose of affording drainage away from the station floor of rain water that might beat against the door from rain storms which frequently blow down from the North, for example.

 A common carrier is required to exercise only reasonable and ordinary care in providing station facilities for the protection and accommodation of passengers using such stations, 13 C.J.S., Carriers, § 717, pp. 1333, 1334; and there is, of course, a corresponding duty resting upon passengers and others using such facilities to watch their step and otherwise exercise ordinary care. See Illinois Central R. Co. v. Sanderson, 175 Ky. 11, 192 S.W. 869, L.R. A.1917D, 890; Seckler v. Pennsylvania R. Co., 113 N.J.L. 299, 174 A. 501. In the case of Van v. Teche Lines, Inc., La.App., 164 So. 267, it was held that the mainte-

nance of a floor in a bus station with a difference in elevation of three inches between floor of dressing room and floor of the station proper was not negligence so as to render the company liable for injuries to a party sustained thereby. There the court said: "The difference in elevation of three inches between the floor of the dressing room and that of the station itself does not, in our opinion, constitute any hazard to the occupants of the waiting room, and cannot be regarded as negligence."

Our attention is likewise called to the case of Ware v. Evangelical Baptist B. & M. Society of Boston, 181 Mass. 285, 63 N.E. 885, an early and often quoted case where it is said: "The injury complained of was due to a fall received by plaintiff while passing from one of the rooms in the Tremont Temple Building, so called, in Boston, belonging to the defendant, to the hallway or corridor on which the room opened. The floor of the room was 4⅞ inches above the floor of the hallway, and it was this difference in height which caused the plaintiff, as she stepped forward out of the room, to fall. She had entered the room a few minutes before through the same door. She had never been in the building previously, if that is material. It is contended that this construction was defective, and this is the negligence alleged. It is a matter of common observation that in entering and leaving stores, halls, railway car stations and platforms, office buildings, and other buildings and places, and private houses, *adjoining surfaces are fre-*

*quently at different levels;* and the difference in level has to be overcome by one or more steps, of greater or less height, or by some other device. The same thing happens in the interior of buildings and structures. We cannot think that such a construction is of itself defective or negligent. There is nothing in the nature of things which requires that the floor of a room which is entered from a hall or corridor, especially in a building like the Tremont Temple Building, should be on the same level as that of the hall or corridor. *Such may be the more usual and common construction, but there is nothing, we think, which requires it to be so, at the peril of being regarded as defective or negligent if it is not,* and if suitable safeguards are not adopted to warn and protect those invited there." (Emphasis ours.)

See also the case of Abrahams v. Zisman, 293 Mass. 375, 199 N.E. 725, which involved a private walk projecting one and one-half to three inches above the adjacent public sidewalk, a case supporting appellant's position, and where it is said that a step between one level and another does not ordinarily warrant a finding of negligence. See also Albachten v. Golden Rule, 135 Minn. 381, 160 N.W. 1012, involving a difference in floor level of 3"; Mills v. City of Wichita, 146 Kan. 772, 73 P.2d 1054; Berquist v. F. W. Woolworth Co., 91 N.H. 428, 21 A.2d 169, 726; Pastrick v. S. S. Kresge Co., 288 Mass. 194, 192 N.E. 485; Main v. Lehman, 294 Mo. 579, 243 S.W. 91.

 It is clear that appellee, immediately prior to the alleged accident, had notice that there was such a step for she had a few minutes before come into the station through the same door. She was bound to have employed the step upon entering, and the fact that she may not have seen it, might not have looked "as to where she is (was) placing her feet" as she should have (Seal v. Safeway Stores, Inc., supra), would not absolve her of the duty to take notice thereof. The ordinarily prudent person will be presumed to possess those qualities of attention and perception which are usually possessed by mankind in general. (Syl.) Blackwell v. J. J. Newberry Co., Mo.App., 156 S.W.2d 14. Incidentally, if that should be important, there is no evidence that appellant ever had notice of any one falling at the step or complaining of the character of the structure here in question, or that it had previously regarded the step as dangerous (as was the case in Glaser v. Rothschild, 221 Mo. 180, 120 S.W. 1, 22 L.R.A.,N.S., 1045, 17 Ann. Cas. 576). Appellant, it appears, knew or could have known no more "in regard to its character as being dangerous or otherwise than by seeing it and observing its location and surroundings", an opportunity equally open to appellee. Main v. Lehman, supra [294 Mo. 579, 243 S.W. 94]. To quote further from the Main opinion: "No case is cited from this or any other jurisdiction and we have been unable to find any, where the invitee had full knowledge and information immediately before his or

her injury of the step or other obstruction complained of, in which defendant was held guilty of negligence or liable for the plaintiff's injury."

Appellee's argument that had this been a step-down of four to six inches it would have been a different matter, does not impress us. That is to concede that one using the entrance must take notice that there might be a change in elevation at the door, and must, at his peril, look where he is stepping. It is obvious that had there been such a step here, under the circumstances, appellee could as well have suffered the injury complained of. She was not looking where she was walking but "looking straight ahead, following the crowd", she testifies. She did not look at the step, in fact, either in entering or leaving the station, although she used this doorway both in her entrance and exit.

If it is to be said that the maintenance of a step four to six inches in height would not be negligent, what about a step three and one-half inches in height? Or one of two and one-half inches?

Clearly, appellee would not have seen a step of any elevation under the circumstances, for she was not looking. And, there is no showing that in thus "following the crowd" she would have been unable to have seen the step had she looked; no showing that she was either crowded into or pushed out of the door, if that could have made a difference; and certainly no claim that any other person was using the door in conjunction with her, something quite unlikely, if not impossible, because of her considerable size. When it can be said that to maintain some certain height of elevation at the entrance would not be negligent, which we understand is conceded, we must say that under the circumstances of the case the maintenance of the one in question would not support such a finding.

It is a matter of common knowledge that in Santa Fe particularly, if not generally, sidewalk, and entrance, elevations to most places, private and public, are quite without uniformity. Some circumstances might be presented where a two or three inch change in elevation of an entrance step might present a hazard which would call for a determination by the fact finder of whether or not there be negligence in the maintenance thereof. But this is not such a case. Snodgrass v. Turner Tourist Hotels, 45 N.M. 50, 109 P.2d 775, relied upon by appellee, is easily to be distinguished. There, other circumstances than the character of the step structure itself, including the important factor of improper lighting, combined to present the hazard.

The case of Cates v. Evans et al., Mo. App., 142 S.W.2d 654, 657, presents facts quite similar to those here present and supports the conclusion we reach. In that case there was a step of some three or four inches at the entrance to a store. It was held, as a matter of law, that the maintenance thereof would not support a claim of negligence on the part of one injured in

falling when stepping out of the store upon it through a regular entrance door. To quote from the opinion: "No hidden danger, as that term implies, is disclosed, such as would require defendants to warn. It is true, as plaintiff contends, that the step-down could not be seen when she was in the drug store while the door was closed. No complaint is made of insufficient light. She advanced to the door, which in her own language was 'three and a half or four feet wide', took hold of the door knob and pulled it toward her. In so doing it is a physical fact that she must have stepped back as she pulled the door open or must have been a sufficient distance from the door to permit it to clear before she stepped out. The fact that she had never been through this doorway before avails nothing. In pulling the door toward her and open, the common, ordinary step-down was in plain view before her—nothing to conceal it—nothing to prevent her from seeing it had she been exercising due care for her safety. But she was looking in a show window across the lobby in another business establishment where her attention was attracted by a shirt and tie displayed therein, and she relies upon this circumstance to justify her failure to watch her step as she attempted to pass through the exit from defendants' store. We know of no rule of law that supports such contention, or that would relieve her, under such circumstances, from exercising due care. The evidence wholly fails to establish negligence on the part of defendants. The only reasonable conclusion that we can arrive at is that plaintiff fell, while gazing into the show window and paying no attention to how or where she stepped as she made her exit from defendants' store. To hold defendants liable under the facts in this case would make them liable as insurers and not because of negligence. Watkins v. Piggly Wiggly Bird Co., 8 Cir., 31 F.2d 889; Mann v. Pulliam et al., 344 Mo. 543, 127 S.W.2d 426; Ilgenfritz v. Missouri Power & Light Co., supra [340 Mo. 648, 101 S.W.2d 723]; Main v. Lehman, 294 Mo. 579, 243 S.W. 91."

█ So-called expert testimony was introduced on behalf of appellee to show the maintenance of such a step to have been negligent because people generally are used to steps of about six inches in height, and that such is, ordinarily, the height of such construction. In other words, that it should be so constructed as to accommodate the accustomed stride of the average person. Such testimony cannot here be relied upon to establish liability. As was said in the case of Pastrick v. S. S. Kresge Co., 288 Mass. 194, 192 N.E. 485, 486: "The court is not ignorant of common devices and common dangers, and *no admission or expert opinion can establish liability where common knowledge shows that there was no danger* so substantial that a reasonable man in the position of the defendant would have anticipated injury and guarded against it. * * * Here there was nothing out of order, and no such wear as there was in Bennett v. Jordan Marsh Co., 216 Mass. 550, 104 N.E. 479, Solomon v. Boston Elevated Railway Co., 276 Mass. 139, 176 N.E.

810, Hillis v. Sears, Roebuck & Co., 284 Mass. 320, 187 N.E. 558, and Shrigley v. Boston Symphony Orchestra, Inc. [287] Mass. [300], 191 N.E. 420. One may not expect all stairways to be alike, nor assume that every stairway will *fit exactly his own accustomed stride or even that of the average person*." (Emphasis ours.)

In view of the conclusion we reach on the question argued under point 2, it becomes unnecessary to notice other assignments. The trial court should have sustained appellant's motion for an instructed verdict. For the reasons stated the judgment is reversed with direction to set aside the judgment heretofore given and entered and to enter judgment for appellant. And it is so ordered.

SADLER, C. J., and BRICE, J., concur.

BICKLEY and LUJAN, JJ., did not participate.