JOHN WHALEN, PLAINTIFF IN ERROR, v. THE CONSOLIDATED TRACTION COMPANY, DEFENDANT IN ERROR.

1. When a passenger in charge of a common carrier shows that he was injured through some defect in the appliances of the carrier, or through some act or omission of the carrier's servant, which might have been prevented by a high degree of care, there the jury have the right to infer negligence attributable to the carrier, unless the carrier proves that due care was exercised.

2. The plaintiff testified that, while a passenger standing upon the run-ning-board of a crowded trolley car, he was thrown off the car by the conductor of the car stumbling against him as he passed along the board in the discharge of his duties, but that he did not know the cause of the stumble. *Held*, that on this state of the case a nonsuit was erroneous.

[*Submitted December* 13*th*, 1897 ; *decided June* 20*th*, 1898.]

On error to the Supreme Court. This case was tried at April Term, 1897, of the Hudson Circuit Court, before Justice Lippincott and a jury, and at the close of the plaintiff's case the trial justice granted defendant's motion for a nonsuit, to which ruling the plaintiff excepted.

For the plaintiff in error, *Thomas McEwan, Jr.*, and *Frank M. Hardenbrook*.

For the defendant in error, *Vredenburgh & Garretson*.

The opinion of the court was delivered by

DIXON, J.   The circumstances presented by the plaintiff's evidence on the trial of this cause are as follows : On June 21st, 1896, about forty minutes past nine o'clock at night, the plaintiff, with his wife and four young children, boarded a trolley car of the defendant, in Bayonne, for the purpose of riding to Jersey City. The car was an open one, with a board running along the outside, upon which the conductor walked to collect fares. When the car stopped to receive the plaintiff, it was crowded with passengers, not only within the car but also on the running-board outside. The plaintiff's wife and children secured places inside, but the plaintiff himself stood upon the board near the middle of the car, crowded in among other passengers and holding on to an upright post of the car. When he had been in that position about fifteen minutes, the conductor, who had passed by him several times collecting fares, approached him again in going from front to rear on the board, and then occurred the accident for which the plaintiff sues, and which, on the trial, he thus described :

"He [the conductor] was passing right around me, and somehow he stumbled, I could not say how, but he caught hold of me to save himself; * * * he caught me by the shoulder and threw me off the car; * * * he tried to catch the upright, and lost his foot and caught hold of me."

Upon this evidence a judgment of nonsuit was entered, which the plaintiff seeks to have reversed.

It is clear that, although, by taking his stand upon the outside running-board of the car, the plaintiff assumed the risk of such damages as were obviously incident to that position, still the company, by accepting him there as a passenger, owed to him the duty arising out of that relation. *City Railway Co.* v. *Lee,* 21 *Vroom* 435; *New York, Lake Erie and Western Railroad Co.* v. *Ball,* 24 *Id.* 283; *Watson* v. *Camden and Atlantic Railroad Co.,* 26 *Id.* 125; *Graham* v. *Manhattan Railway Co.,* 149 *N. Y.* 336. Consequently, while one of the obvious dangers of his position was that resulting from the use of the board by the conductor, it would, nevertheless, be competent for the plaintiff to insist that, in the manner of using it, the conductor had been guilty of a breach of the defendant's duty towards him.

It is contended for the plaintiff that the company might be held responsible for not providing a car within which he might ride safely, or for not furnishing other means for the passage of the conductor in the discharge of his functions; but, even if it could be maintained that the company was under such obligations to the public, it was evident to the plaintiff, before he boarded the car, that, with respect to that ride, those duties could not be performed toward him, and for that ride he took the risk of their non-performance and absolved the company therefrom.

Under the circumstances of this case, the only breach of duty chargeable against the defendant could exist in a lack of due care on the part of the conductor as he passed along the board, and therefore we must consider whether the evidence was such as should have been submitted to the jury on the question of his negligence.

The ordinary rule in actions for negligence is that plaintiff must produce some affirmative proof of the want of care on the part of the defendant, and if his evidence is as consistent with care as with negligence in the defendant, he must fail. *Cotton* v. *Wood,* 8 *C. B.* (*N. S.*) 568; *Hammack* v. *White,* 11 *Id.* 588; *Weller* v. *McCormick,* 18 *Vroom* 397; *Searles* v. *Manhattan Railway Co.,* 101 *N. Y.* 661.

But in actions for injuries suffered by passengers while in charge of common carriers the rule is somewhat different. The rule there applicable is modified by the doctrine which seems to have given rise to the almost absolute responsibility of the common carrier of goods—the doctrine that the carrier's greater means of ascertaining and disclosing the cause of damage place upon him a greater duty of explanation.

The rule supported by authority is that when a passenger shows that he was injured through some defect in the appliances of the carrier, or through some act or omission of the carrier's servant, which might have been prevented by due care, then the jury have the right to infer negligence, unless the carrier proves that due care was exercised.

Thus, in *Christie* v. *Griggs,* 2 *Campb.* 79, the plaintiff, a passenger in a stage coach, proved that the axletree broke, and Chief Justice Mansfield, deeming such proof *prima facie* evidence of negligence, called upon the defendant to show that the damage arose from mere accident.

In *Carpue* v. *London Railway Co.,* 5 *Q. B.* 747, where the train had left the track, Chief Justice Denman instructed the jury that the exclusive management of the machinery and railway being in the hands of the defendants, it was presumable that the accident arose from their want of care, unless they gave some explanation of the cause by which it was produced, which explanation the plaintiff, not having the same means of knowledge, could not reasonably be expected to give.

In *Stokes* v. *Salstonstall,* 13 *Pet.* 181, where the plaintiff's wife had been injured by the upsetting of a stage coach in

which she was a passenger, a charge to the jury that the fact that the coach was upset was *prima facie* evidence of carelessness was approved.

In *Feital* v. *Middlesex Railroad Co.*, 109 *Mass.* 398, it was held that, on trial of an action against a street railway corporation for injuring a passenger, proof that the injury was caused by a car running off the track, at a place where the track and the car were under the exclusive control of the defendants, was sufficient to charge them with negligence, in the absence of any evidence that the accident happened without their fault. The same application of the rule was made in *Seybolt* v. *New York, Lake Erie and Western Railroad Co.*, 95 *N. Y.* 563.

In *Pennsylvania Railroad Co.* v. *MacKinney*, 124 *Pa. St.* 462, the plaintiff, while a passenger in one of the defendant's trains, was struck in the eye by some hard substance hurled from without, and the trial judge charged the rule of law applicable to the case to be that the mere happening of an injurious accident to a passenger while in the hands of a carrier will raise, *prima facie*, a presumption of negligence and throw the *onus* of proving that it did not exist on the carrier. Of this charge the Supreme Court said, " it is an old and well-settled principle of law, of very general application in cases of injury to passengers while in the course of transportation," but that it could be invoked only when there was some evidence tending to connect the carrier or his servants, or some of the appliances of transportation, with the happening of the injury. See, also, 2 *Shearm. & R. Neg.* (5th ed.) *516.

Under this rule we think the plaintiff's evidence presented a question for the jury. His injury was the direct result of the conductor's act in seizing him to save himself as he stumbled. The cause of his stumbling the plaintiff did not know and could not reasonably be required to ascertain and disclose, while it probably was known to the conductor, the agent of the defendant. Bearing in mind that the care due

from a common carrier and his servants toward passengers in their charge is a high degree of care (*Readhead* v. *Midland Railway Co.*, L. R., 4 Q. B. 379, 393 ; *Caldwell* v. *New Jersey Steamboat Co.*, 47 *N. Y.* 282 ; *Feital* v. *Middlesex Railway Co.*, *ubi supra* ; *City Railway Co.* ads. *Lee*, *ubi supra* ; *Consolidated Traction Co.* v. *Thalheimer*, 30 *Vroom* 474), it is certainly not irrational to infer that the conductor, who had passed so often over the same place, under apparently the same conditions, without stumbling, on this occasion stumbled through a failure to exercise that high degree of care required of him. To preclude the jury from drawing such an inference, the defendant should have been called on to explain the true cause of the occurrence.

The judgment of nonsuit must be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, COLLINS, DEPUE,. DIXON, GARRISON, GUMMERE, LUDLOW, VAN SYCKEL, ADAMS, BOGERT, HENDRICKSON, NIXON, VREDENBURGH. 13.