HELEN HOFF, RESPONDENT, v. PUBLIC SERVICE RAILWAY COMPANY, APPELLANT.

Submitted December 10, 1917—Decided March 4, 1918.

The plaintiff sued for damages consequent upon an assault and battery, committed upon her by a passenger on defendant's trolley car. The testimony upon which there was no material dispute, showed that when she entered the car about eleven-twenty o'clock at night, she was addressed by a passenger who had been drinking, with the remark, "Ah! look who's here," or words equivalent thereto. When she was leaving the car she left her seat near the front exit, when she might have left by the front exit, and purposely passed the stranger, who again addressed her with, "Hey, chicken, take us along." She turned back and said, "You have insulted me since I got on this car. If you insult me again I will smack your face." He rose and struck her on the face and breast, when he was taken into custody by two police-

men, in uniform, who had entered the car shortly after her entrance, and were seated opposite to her. After their entrance no offensive language was used on the car. She made no appeal for protection to the officers or to the conductor, and the assault upon her at the door was perpetrated in a moment, and before the conductor or police could intervene. *Held*, that where there was no testimony in the case, from which an inference could be drawn that the defendant had failed to use due care for the protection of the plaintiff, and that in the absence of such proof the defendant was entitled to a direction in its favor.

On appeal from the Supreme Court, whose opinion is reported in 90 *N. J. L.* 386.

For the respondent, *Alexander Simpson.*

For the appellant, *Lefferts S. Hoffmann* and *George H. Blake.*

The opinion of the court was delivered by

Minturn, J.   The complaint alleges that while the plaintiff was a passenger upon defendant's street car, in Bayonne, she was assaulted by a passenger because of the failure of the defendant to use reasonable care to protect her, and while she was exercising due care upon her part. The testimony disclosed that she was a married woman; that she boarded a car at eleven-twenty o'clock at night, upon which were *several* men passengers, and the conductor; that one of the men who was seated about two feet away from the conductor, remarked to her as she passed, "Ah! look who's coming" or "Ah! look who's here." This remark apparently disconcerted her, so that she forgot to place her fare in the box at the door until she saw the conductor look and smile at her, when she arose and walking back paid her fare. While so doing she heard some unintelligible remark from the man who addressed her upon her entrance. She seated herself about three feet from the front of the car; the men were near the rear door. Shortly afterwards, two policemen, in uniform, entered the car and seated themselves about opposite her. The exact time of their entrance the plaintiff was not

clear about, but she admitted it was not very long after she boarded the car. After their entrance the plaintiff heard no further remarks from any of the men. In her own language prior to the policemen's entrance these men "were saying to themselves and hollering up to me." After the entrance of the policemen no further remarks were passed by anyone until the car reached 16th street, which was the plaintiff's destination.

In attempting to pass the men on her way out by the rear door, one of them, known in the testimony as Mr. Whitman, said to her, "Hey, chicken, take us along." She had then passed the author of this remark, but, upon hearing the utterance, she turned around and said to him: "You have insulted me, since I got on this car. If you insult me again I will smack your face," and he said, "Will you?" and he got up and punched her once on her face and again on her breast, which blows eventuated in the damage which presents the basis for this suit. The jury found in her favor, and the Supreme Court affirmed the judgment, from which determination this appeal is taken.

Her testimony is that when Whitman struck her every man in the car rose to her assistance, including the policemen who took him into custody, and removed him from the car to the police station.

During the entire situation after the entrance of the police, she made no complaint or protest to the conductor, and made none to the police officers, and they were called upon to intervene only when she was about to leave the car; and then not because she invoked their aid, or protection, but because a breach of the peace had taken place in their presence. Her explanation for not appealing to the conductor was that if she did so, "they would have made a row and then the conductor would have a fight," and when asked why she did not appeal to the police officers, said she "didn't want to make any trouble."

When asked why she did not leave the car by the front door near which she sat, instead of walking down the length of the car and passing the objectionable passengers to reach the rear

door, she said: "I couldn't help it. He said so much to me I had to do something." The two police officers testified that when the blow was struck, the plaintiff stood with one foot on the floor of the rear vestibule, and the other on the floor of the car proper; and the conductor stood on the platform behind her; that after they entered they heard no loud talk from any one on the car; that they had no reason to anticipate a breach of the peace; and that the affair in the language of one of them "happened in a moment."

Excepting the medical testimony this narrative of facts presented the plaintiff's case. The defendant's witnesses presented no material variant facts, so that, essentially, the plaintiff's right of recovery was predicated upon the accepted truth of her own testimony, and that of her witnesses. A motion for nonsuit and a motion to direct a verdict for the defendant, upon the ground that no negligence upon the part of the defendant had been shown, both of which motions were refused, present the basis of this appeal.

The rule is fundamental that the mere happening of an accident affords no legal ground for a claim for damages, unless the claim can be predicated upon that class of accidents, governed by the rule of *res ipsa loquitur*, which *per se* raises a presumption of negligence. *Bahr* v. *Lombard, Ayres, & Co.,* 53 *N. J. L.* 233.

To invoke the rule of liability for negligence, which is predicated upon the omission to perform, or the performance negligently of some legal duty by the defendant, it must appear that the legal duty existed as *sine qua non* to the defendant's liability. *Kingsley* v. *D., L. & W. R. R.,* 81 *N. J. L.* 536.

Such a duty cannot be presumed, but must be proved. *Add. Torts* 36.

In the circumstances of the case *sub judice,* this general duty of the defendant has been defined by this court to be, to guard its passengers "from assaults and insults from their fellow-passengers and strangers, when by a high degree of care the same might have been prevented." *Exton* v. *Central Railroad,* 62 *N. J. L.* 8; *affirmed* in 63 *Id.* 356.

The duty thus generically formulated is more specifically stated in the case cited, as a duty "to provide reasonable precautions to protect the passengers from assaults from any quarter at which they might be reasonably expected to occur, under the circumstances of the case, and the condition of the parties." Manifestly, the *ratio decidendi* underlying the rule thus declared is reasonable expectation of likelihood of harm. For, obviously, were the rule otherwise, the doctrine of reasonable care in such an exigency, would be transmuted into individual insurance of the passengers' safety from injury against all hazards, and in anticipation of all possible dangers. Where, as in the case at bar, no diversity of fact exists regarding the salient features of the situation, liability must be predicated, if at all, in the application of the rule, upon a basis consonant with reason and abstract justice, and the practical possibilities inherent in the situation. *Cessente ratione legis cessat ipsa lex.*

In the situation presented, the plaintiff found herself, not in an isolated position, or in a dangerous environment, to escape from which she had to look to the conductor as her only protector and safeguard. Seated opposite to her were two police officers in uniform; and in this fortuitous environment it must have been apparent to her that she possessed every reasonable assurance for her safety and protection. From the time the officers entered the car until she was in the act of leaving it, the situation was quiescent, and nothing took place to indicate to anyone that the plaintiff was in danger.

It may be assumed, therefore, that the plaintiff herself could not have anticipated what subsequently happened, or, as a careful and prudent woman, she would have made her exit from the front of the car, in order to avoid possible danger, and it is within the range of probabilities to assume that if she had foreseen the occurrence, an immediate appeal would have been made by her to those in authority on the car for protection. Such an appeal, if unheeded by the conductor, would indubitably place the defendant company in the cate-

gory of a tort-feasor; but none was made, and the inference is that danger was neither imminent nor anticipated by her.

If this be the logical and reasonable deduction from the situation, it is difficult to perceive upon what theory of prescience or foresight the defendant can be chargeable with the performance of a duty, based upon the exercise of foresight and care, which duty the facts and circumstances could not call into being, or cause to be invoked for the purpose of obviating an existing danger.

The absence of any appearance of danger to the plaintiff, and to the officers, must be conceded to have been equally obvious to the conductor. It is also a conspicuous fact that if the plaintiff had sought exit by the front door, which was near and convenient to her, the danger complained of would have been obviated; and while no positive duty was incumbent upon her in that regard, so far as the case shows, we cannot be unmindful of the fact that the possible danger inherent in the situation existed at the rear exit, and that the plaintiff was conscious of that fact.

So far conscious of it was she, and so determined to meet it, that she testified as her excuse for this choice of exit. "He said so much to me, I had to do something." In such a situation the inquiry results, and its answer presents the gravamen of the case, and the rational solution of the inquiry, what under such circumstances could the conductor have done; not only to anticipate or foresee the conduct of the man who insulted her, but also to anticipate her own conduct, which in a measure at least provoked the assault which caused her injury? The legal obligation to exercise due care in any case involves a reasonable answer to such an inquiry, and the present case offers no solution which could in practical execution have anticipated the injury and prevented it.

The application of the doctrine of contributory negligence is not without its practical importance in such a situation; for the fundamental reason for the existence of the rule inheres in the maxim, *Volenti non fit injuria;* and denies a recovery to one who in any proximate degree has consciously

made himself the instrumentality of his own injury. *Ilott* v. *Wilkes*, 3 *B. & A.* 304.

The application of the rule in the case *sub judice* must obviously militate against the plaintiff's right of recovery; for, manifestly, had she continued upon her course, and alighted from the car instead of returning to threaten her insulter with physical violence, the sequel consequent upon her act would not have occurred.

That she invited trouble of some character is obvious from her state of mind, indicated by her testimony, to which reference has been made. The rationale of the instructions imparted to the jury by the learned trial court, as well as that contained in the opinion of the Supreme Court, is based upon the assumption that because her insulter was drunk, some indefinable duty of protection was cast upon the conductor. We find no warrant in the case for the assumption that the man was drunk; but if he were, that fact was as obvious to the plaintiff as it was to the conductor; and it therefore required from her the exercise of at least some degree of prudence and foresight looking to her safe exit from the car. That he was not boisterously intoxicated, or drunk to such a degree of offensiveness as to make a nuisance of himself to his fellow-passengers, is evidenced by the testimony of the police officers; and such, in effect, we have decided must be his physical and mental condition before the defendant would be warranted in ejecting him. *Parks* v. *D., L. & W. R. R.*, 85 *N. J. L.* 577; affirmed in this court in 86 *Id.* 696.

The contrary situation is manifest from the testimony which evinces without contradiction that from the time when the policemen entered the car until the time the plaintiff attempted to leave it, nothing of an objectionable nature occurred to attract their attention; and with the presence of the officers confronting the insulter, it is not too much to assume that if the plaintiff had proceeded to alight, instead of returning to threaten the man, his offensive remark would have spent itself in harmless vacuity. Equally patent is it that any mediation or interference by the conductor at that

time, based upon a recognition of the duty of foresight and due care, must have proved ineffectual to prevent the occurrence of the assault upon the plaintiff; for, in the language of her witness, it was perpetrated in a moment.

In such circumstances indicating no failure of performance of any obvious or definable duty, by the defendant, its act of tort-feasance must be proved, and cannot be assumed or left to conjecture by a jury upon a hypothesis of duty which has nothing to support it but the mere happening of the injury.

The judgment of the Supreme Court·will be therefore reversed, to the end that a *venire de novo* may issue.

*For affirmance*—THE CHANCELLOR, GARRISON, PARKER, WHITE, JJ.  4.

*For reversal*—SWAYZE, BERGEN, MINTURN, KALISCH, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ.  8.