THERESA SECKLER, PLAINTIFF-APPELLANT, v. PENNSYL-
VANIA RAILROAD COMPANY, A CORPORATION, AND
HUDSON AND MANHATTAN RAILROAD COMPANY, A
CORPORATION, DEFENDANTS-RESPONDENTS.

Argued May 21, 1934—Decided September 27, 1934.

For the appellant, *Kalisch & Kalisch.*

For the respondents, *Wall, Haight, Carey & Hartpence.*

The opinion of the court was delivered by

HETFIELD, J. This suit was instituted to recover damages
for personal injuries received by the plaintiff, as the result of
respondents' alleged negligence. The facts, which are undis-
puted, show that the plaintiff, who resided in Irvington, and
was engaged in business in New York City, had used the
tube trains daily from and to Newark, for a period of about
three years prior to the accident, which occurred on the

morning of November 1st, 1930, at about eight-ten o'clock. It was her custom to board the train at the Park Place station, in Newark, each day about this time. It also appears that between eight and nine o'clock in the morning, and five and six in the evening of each day, a greater number of passengers go to and from the trains than at any other time, and that those periods are referred to as "rush hours." On the morning in question, as she was about to enter the station doorway, which faced Saybrook Place, the door, which swung outward, was thrown open by persons leaving the station, causing it to strike her right knee, and injuring same to such an extent that it required considerable medical attention thereafter. At the close of the entire case, the court directed a verdict in favor of the defendants, and judgment was entered accordingly, and this appeal was taken, which only involves the Pennsylvania Railroad Company, as the appellant conceded before the direction, that there was no proof to the effect that the other defendant in any way controlled or maintained the station in question.

The plaintiff urges a reversal on the ground that the uncontradicted facts would support a finding by the jury that the defendant had failed to use reasonable care to provide a safe entrance to the station for its passengers, in that (1) the "rush hour" was a daily occurrence; (2) the same doors were used for exit and entrance purposes; (3) persons were unable to see clearly the interior of the station through the glass of the doors; (4) no guards were furnished to control the crowds passing through the entrance.

There is a distinction, long recognized by the courts of this state, between the degree of care required of a common carrier, with respect to the safe carriage of its passengers, and that required in the construction and maintenance of its station and the approaches thereto. In the first instance, the requirement calls for the exercise of a high degree of care, and in the latter, which involves the duty owed by the defendant to the plaintiff in the present case, such ordinary care and precaution as would make the premises reasonably safe for the use of passengers. This doctrine is followed in *Dot-*

*son* v. *Erie Railroad Co.,* 68 *N. J. L.* 679; *Mason* v. *Erie Railroad Co.,* 75 *Id.* 521; *Foley* v. *Brunswick Traction Co.,* 66 *Id.* 637; *Feil* v. *West Jersey and Seashore Railroad Co.,* 77 *Id.* 502.

We must consider the degree of care which was exercised for the plaintiff's safety, rather than the degree of success resulting therefrom, and are unable to find any proof to warrant the conclusion that the defendant failed to observe the duty legally imposed upon it, as a carrier of passengers. The station was provided with three entrances or exits, and the plaintiff stated that she did not use the main entrance on the day in question, because it was crowded, and that she never entered the station through the entrance located on Center street. The Saybrook entrance consisted of four doors, a double doorway in the center, which the plaintiff was about to enter when the accident occurred. There was glass in the upper part of the doors, which would be in the line of vision of a person about to enter. There is no suggestion that the entrance was not of a suitable type and construction; but it does appear that it conformed in every respect, to the building code of the city of Newark. We find no proof that the construction differed in character from those in common use in other railroad stations or buildings frequented by the general public. In the case of *Feil* v. *West Jersey and Seashore Railroad Co., supra,* where the plaintiff was injured by reason of stepping into a depression in the station platform, and the trial court directed a nonsuit, the late Chief Justice Gummere, speaking for this court, said: "Negligence must be proved, and, in a case like the present, that can be done only by showing that the platform is of a design which a reasonably careful judgment would disapprove as being likely to cause accident to persons using it as a way to and from trains. To hold otherwise would be to leave railroad companies to the mere caprice of juries, and subject them to the danger of being found guilty of negligence no matter what plan of construction they might adopt."

While there is always the possibility that passengers in railroad stations might be injured by some careless or wanton

act of a fellow passenger or stranger, it does not necessarily follow that the railroad company is responsible, unless such act should have been reasonably anticipated. There is nothing in the evidence which would justify a jury in finding that the defendant ought to have anticipated the accident in question, or that a like occurrence had ever happened. The condition which always existed at the "rush hour," was as obvious to the plaintiff, as to the company, as she had been accustomed to entering the station every working day, during the "rush hour," for a period of three years. She does not refer to any incident during that time, which would suggest to a prudent person, that the type of entrance, or the manner of maintaining it, was in any way dangerous. It does not appear that there was any disorder or pushing by the persons leaving through the Saybrook entrance, or that after she had fallen, the crowd was such that she was trampled upon, or otherwise injured by it. There was not an unusual number of persons entering and leaving the station, considering the time of day when the accident occurred, and we cannot see how the failure to furnish doorkeepers or attendants, in any way contributed to the happening, as the plaintiff testified she saw no one leave the entrance in question just prior to her attempt to enter.

We do not think that the case of *Sandler* v. *Hudson and Manhattan Railroad Co.*, 8 *N. J. Mis. R.* 537; *affirmed* (by divided court), 108 *N. J. L.* 203, relied upon in the plaintiff's argument, is in point, as a much different situation existed. There, the plaintiff, while waiting on the station platform to board a train, was pushed off of it by the crowd, and fell between two cars of the train. It appeared that ordinarily, the railroad company at that time of the day, had four or five guards to control the crowd, thereby indicating that it had assumed that duty, and having done so, was bound to use reasonable care in the performance of same when trains were approaching the station. *Wolcott* v. *New York and Long Branch Railroad Co.*, 68 *Id.* 421; *Brown* v. *Erie Railroad Co.*, 87 *Id.* 487. There was proof to show that no guards were present at the time of the accident, and also

evidence to the contrary. The Supreme Court held that under such conditions of proof, a jury question was presented. No such situation exists in the present case, there being no proof to indicate that the accident should have been reasonably anticipated.

We conclude that the trial court's direction was justified, and the judgment will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, KAYS, HETFIELD, WELLS, JJ. 10.

*For reversal*—THE CHANCELLOR, PERSKIE, VAN BUSKIRK, DEAR, JJ. 4.