MARY H. SPALT, PLAINTIFF-RESPONDENT, v. CORNELIUS
EATON, DEFENDANT-APPELLANT.

DONALD SPALT, PLAINTIFF-RESPONDENT, v. CORNELIUS
EATON, DEFENDANT-APPELLANT.

Argued January 19, 1937—Decided June 15, 1937.

328

Before Justices TRENCHARD, BODINE and HEHER.

For the appellant, *Alan Kraut.*

For the respondents, *Frank A. Boehler.*

The opinion of the court was delivered by

HEHER, J. Defendant is a common carrier of passengers. The gravamen of the action instituted by Mary H. Spalt is negligence by the operator of one of his buses, whereby she sustained personal injuries. Her husband, Donald, sued *per quod.* The District Court judge, sitting without a jury, found in favor of the plaintiffs; and defendant appeals from the consequent judgments.

Prior to the trial, defendant propounded certain interrogatories to plaintiffs. They were answered in due course. Inquiry was thus made for the names of the physicians claimed to have treated Mary H. for the asserted injuries; and the first insistence is that there was error in permitting the introduction, over defendant's objection, of evidence of medical aid rendered by a physician not so identified in the answer to that particular interrogatory.

The point is not well made. While a defendant in such an action may have, in the form of a bill of particulars, a statement of the expenditures made by the injured plaintiff for medical attention, and, in connection therewith, the names of the physicians who rendered the service (*Wolfson* v. *Mills,* 112 *N. J. L.* 1), it is the settled rule that section 140 of the Practice act of 1903 (3 *Comp. Stat.* 1910, *p.* 4097) does not

permit of the service of interrogatories, after issue joined, directed to the identification of witnesses to be called by the adversary party. The interrogatories authorized by this section may not be used to serve the office of a bill of particulars. They must needs relate to the case of the party propounding them, and cannot be used merely to pry into the case of his adversary. And an interrogatory is required to be so framed that a responsive answer would be relevant and competent evidence for the party proposing it. *Watkins* v. *Cope,* 84 *N. J. L.* 143. The common law, in civil cases, did not require advance notice to the adversary party of the names of witnesses to be produced. *Wigm. Ev.* (*2d ed.*), §§ 1845, 1856, 1856c. While the modern tendency is to liberalize the practice in this respect, the ancient restriction has not been removed by our statute relating to discovery by interrogatories. They are required to be confined to matters "material to the issue." Moreover, answers to interrogatories, while introducible as evidence, are not conclusive on the party making such answers of the matters of fact embraced therein. *Goodman* v. *Lehigh Valley Railroad Co.,* 82 *N. J. L.* 450.

The next inquiry is whether there was tangible evidence of defendant's guilt of negligent conduct proximately causing the injuries complained of. We think there was.

There was evidence tending to establish the following matters of fact: A passenger under the influence of intoxicating liquor indulged in unseemly language, and refused to obey the bus operator's command, repeated several times, to be seated. Mrs. Spalt testified that his misconduct inspired fear. The operator finally admonished him that, unless the misbehavior ceased, he would be required to eject him from the vehicle, whereupon the offender's brother, also a passenger, made known that he would resist such an effort with force. Thereupon, the driver, in a noticeably angry mood, proceeded to expel the intoxicated passenger. Mrs. Spalt gave evidence that "the driver came out of the seat, and they got into a tussle, and the driver hit him, and the fight started." The brother of the intractable passenger joined in the fray. He testified that when the driver "came through under the

rail," his manner indicated an intention to "assault" his brother, and he deemed an assault upon the driver essential for the "protection" of his brother. Mrs. Spalt further testified: "They all started to fight; I was caught in between and I couldn't get back to my seat again and couldn't get out of the bus, and I was thrown against the partition here." While the misbehavior of the first-named passenger began some time before the altercation, the bus operator did not invoke the aid of one of the police officers stationed along the route (the boulevard in the city of Jersey City), although he testified he was under instructions "to stop," in case of disorder, "and have a cop or policeman take" the offender "off the bus." He maintained that he brought the vehicle to a stop, intending to pursue this course, and that, as he was leaving his seat, the disorderly passenger and his brother set upon him before he could call police aid; and that he was guilty of no provocative action. But this conflict in the proofs was a matter peculiarly within the province of the trier of the facts. Of this more hereafter.

There is laid upon the carrier the duty of using a "high degree of care" for the safety of his passengers. *Skillen* v. *West Jersey and Seashore Railroad Co.,* 96 *N. J. L.* 492; *Hoff* v. *Public Service Railway Co.,* 91 *Id.* 641; *Exton* v. *Central Railroad Co.,* 62 *Id.* 7; *affirmed,* 63 *Id.* 356; *Miller* v. *West Jersey and Seashore Railroad Co.,* 71 *Id.* 363; same case on appeal, 79 *Id.* 499; *Lehberger* v. *Public Service Railway Co.,* 79 *Id.* 134; *King* v. *Steglitz,* 111 *Id.* 11; *Schreiber* v. *Public Service Co-ordinated Transport,* 112 *Id.* 199; *Jackson* v. *Delaware, Lackawanna and Western Railroad Co.,* 111 *N. J. L.* 487; *Seckler* v. *Pennsylvania Railroad Co.,* 113 *Id.* 299; *Davis* v. *Public Service Co-ordinated Transport,* 113 *Id.* 427; *Rivers* v. *Pennsylvania Railroad Co.,* 83 *Id.* 513; *Hansen* v. *North Jersey Street Railway Co.,* 64 *Id.* 686.

This term does not lend itself to precise legal definition, absolutely resolving every case. It is relative in the sense that the thing to be done to avert injury depends upon the special circumstances; and this ordinarily involves a factual inquiry. It is such degree of care as is commensurate with

the risk of harm—such as one exercising a high degree of care, skill and diligence, directed to the passenger's safety, and consistent with the nature of the carrier's undertaking and the practical operation of the vehicle or mode of conveyance, would under all the circumstances deem prudent to obviate the danger, known or reasonably to be anticipated. The carrier is not an insurer of the passenger's safety. But he is enjoined to shield the passenger from every danger which human care and foresight can reasonably anticipate and prevent, compatible with the nature and needs of the business. If he knew, or had reasonable cause to know, of the likelihood of injury to the passenger, and the danger is preventable by the exercise of due care, so measured, he is answerable for the consequences of his non-conformance to that standard. Our court of last resort has laid down the principle that whether, under the circumstances of a given case, "the degree of care that is reasonable be high or low it is imposed by law solely upon the ground that it is reasonable." *Blumenfeld* v. *Hudson, &c., Railroad Co.*, 89 *N. J. L.* 580. And the Massachusetts courts hold that the standard of care imported by the term "highest degree of care" is "reasonable or due care under the circumstances." *Thayer* v. *Old Colony Street Railway Co.*, 214 *Mass.* 234; 101 *N. E. Rep.* 368. The circumstances necessarily enter into the consideration of what is "a high degree of care" in the particular case. See *Partridge* v. *Woodland Steamboat Co.*, 66 *N. J. L.* 290.

This court has held that the carrier owes to passengers the duty of protecting them, not only from the violence and physical assaults of their co-passengers and intruders, but from insults as well; and that, in the performance of the duty, the employe in charge of the vehicle is justified, "if necessary, and, indeed, may be required in some cases, to eject the offending passenger from the conveyance, and may, further, in case of necessity in order to accomplish such ejectment, call to his aid such of the passengers as would be willing to assist him." *Frazier* v. *Public Service Railway Co.*, 97 *N. J. L.* 37. See, also, *Haver* v. *Central Railroad Co.*, 62 *Id.* 282.

Generally, a common carrier of passengers is clothed with the right, and it is often a duty, to enforce order and decency upon its conveyance; and, where the conduct of a passenger is so offensive and disorderly as reasonably to warrant the inference that inconvenience or annoyance may result, expulsion may be enforced, even if no overt act of positive disturbance has been committed. The carrier is not required to await a more serious outbreak, with its probable consequences, before taking appropriate action. Thus, where there is reasonable apprehension of annoyance or danger to passengers at the hands of an intoxicated co-passenger, the carrier is authorized, and may indeed be under a duty, depending upon the circumstances, to eject the offender; and, in so doing, he incurs no liability for damages, if the right is reasonably exercised in conformance with the standard of duty so laid upon him. By his contract of carriage, the passenger invokes the protection and benefit of this rule, whenever its enforcement is reasonably necessary; and a carrier is liable only for the negligence of his servant while so acting. Yet the exercise of this right must be consonant with the demands of the duty owing to all the passengers. The carrier "is not relieved from liability by proof that ejection was warranted, and no more force had been used on the person ejected than was reasonably necessary. The evidence must go further. It should appear that the plaintiff's injuries did not result from the conductor's negligence. * * * It would be a violation, not merely of the essence of the rule which springs from the contract itself, to declare, that while disorder can be suppressed, and if necessary those engaged therein expelled, the carrier can remove the objectionable person regardless of the personal welfare of orderly passengers for whose protection the act of expulsion is undertaken." *Thayer* v. *Old Colony Street Railway Co., supra.*

And it is a corollary of the foregoing that, if the carrier can exercise such right, or render performance of such duty, by another practicable course of conduct, devoid of danger to the passengers, or involving a risk of harm of substantially less degree, it is usually a factual inquiry whether, under the

particular circumstances, the failure to take that alternative course constituted an actionable non-observance of the standard of care adverted to, as regards injury ensuing to a passenger innocent of wrongdoing. See 2 *Torts, A. L. I.,* § 292. In *Whalen* v. *Consolidated Traction Co.,* 61 *N. J. L.* 606, our court of last resort, in a deliverance by Mr. Justice Dixon, declared: "The rule supported by authority is that when a passenger shows that he was injured through some defect in the appliances of the carrier, or through some act or omission of the carrier's servant, which might have been prevented by due care, then the jury have the right to infer negligence unless the carrier proves that due care was exercised."

Evaluating the evidence adduced here in the light of these principles, the motions to nonsuit and to direct a verdict were rightly denied.

Irrespective of the bus operator's intention, there was evidence reasonably tending to show that he, by manner, word and deed, evinced a purpose to resort to force; and whether, in the particular circumstances, it was within the realm of reasonable provision that an attempt at forcible expulsion of the disturber would precipitate a melee, and that course would, in all human likelihood, menace the safety of the passengers, were plainly factual inquiries. The hazards of such a situation in the cramped quarters of the bus would seem to be apparent; passengers would have little or no means of self-protection. The bus operator did not have an unconditional right, nor was he under an absolute duty, to resort to forcible expulsion, if that course were likely to be productive of peril to the non-participating passengers, and an alternative preventive measure less likely to subject the passengers to the risk of harm were available. It can hardly be said that such danger is less than probable when force is resorted to under such circumstances. The remedy in its consequences is ofttimes infinitely more hazardous to passengers than the evil thereby sought to be corrected.

It was within the province of the trier of the facts to determine whether, to borrow the language of our court of last resort in *Hansen* v. *North Jersey Street Railway Co., supra,*

"reasonable foresight should anticipate the possibility of such danger and due caution should provide against it." To that tribunal was committed the determination of the question of whether the peril could reasonably have been anticipated, and there were time and means to avert it. Where the evidence is in conflict, or, if uncontroverted, is reasonably susceptible of incompatible inferences, the resolution of the conflict is the function of the fact-finding authority; and the findings of the District Court in such cases are conclusive on appeal.

Nor did contributory negligence conclusively appear. Where one is confronted with a sudden emergency, not caused by his own tortious conduct, the law will not hold him guilty of negligence if, in the making of a necessarily hasty decision between alternative courses of action, he does not exercise sound judgment. The law does not require of him more than it is reasonable to expect under the circumstances; and whether he did that which a reasonable man so circumstanced would have done is also a question for the fact-finding body. *Barry* v. *Borden Farm Products Co.,* 100 *N. J. L.* 106.

The point that there was error in the denial of defendant's motions to strike out "the testimony alleged to have been produced in the form of the answers to interrogatories in place of the testimony of the plaintiff Donald Spalt on the question of the losses and expenses," is obviously untenable. The interrogatories and answers were introduced in evidence by consent. The motion to strike out, made at the close of the case, was rested upon the single ground that "there is no proof of the reasonableness of the charges."

The remaining points properly raised on the brief were abandoned on the oral argument, and therefore need not be considered.

Judgment affirmed, with costs.