ANNA H. SHIPP, PLAINTIFF-RESPONDENT, v. THIRTY-SECOND STREET CORP., A CORPORATION OF THE STATE OF NEW JERSEY, AND AMERICAN STORES COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.

Submitted May 28, 1943—Decided September 16, 1943.

For the appellant, American Stores Company, *Coult, Satz, Morse & Coult* (*Joseph Coult*, of counsel).

For the respondent, *Lum, Fairlie & Wachenfeld* (*Charles S. Barrett, Jr.*, of counsel).

The opinion of the court was delivered by

THOMPSON, J.  The plaintiff was a customer in a store operated by the defendant American Stores Company. The building was constructed and owned by Thirty-Second Street Corp., who leased to American Stores Company. Plaintiff sued both corporations for personal injuries and money loss allegedly sustained by her as a result of negligent construction and negligent maintenance of the store premises by one or both of the defendants. Thirty-Second Street Corp. was granted a nonsuit. The defendant American Stores Company

offered no testimony at the trial, and the case went to the jury at the conclusion of plaintiff's evidence and following denial of defendant's motions for nonsuit and for direction of a verdict in its favor. The jury awarded damages of $1,250 to the plaintiff, and the defendant appeals from the judgment thereon.

The errors alleged by appellant are in the trial judge's refusals to grant its motions for a nonsuit and direction of a verdict. Both motions were urged on two grounds: (1) that there was no evidence of negligence on the part of the defendant, and (2) that the plaintiff, Anna H. Shipp, was as a matter of law, under the evidence in the case, guilty of contributory negligence and assumed the risk.

We are of the opinion that in the state of the evidence in this case the trial court properly denied the motions for nonsuit and direction of a verdict, and that the questions of negligence and contributory negligence were rightly submitted to the jury for its consideration and decision.

The plaintiff sustained her injuries by falling upon a slippery floor in the defendant's store. Her testimony was that the surface was in an unusually slippery condition, which had existed for some time and previously had been called to the attention of the manager by at least one other visitor to the store, one Dorothy Davis, who so testified at the trial. The manager was present in the court room and was identified by the witness. (S. C., p. 46.) He did not testify in denial of her statement. Another witness, Albert Clothier, Jr., also testified to having visited the store and noticing the "unusually slippery" condition of the floor to the extent that he "watched my step." Mrs. Shipp, upon entering the store with her daughter, it being their first visit there, turned to the left to go to the dairy counter. She says the floor was hardwood, highly polished, "unusually slippery, more so than any I have ever seen before." Asked as to the degree of polish, she replied, "It was very highly polished. I kept looking at it and watching it. I went very slowly. * * * I thought it was more highly polished than any other floor." Reaching the dairy counter, having traversed the floor for about fifteen feet from the entrance to that point, she asked

for butter and was told that article was "self service," and she had to go the length of the counter, around a display of canned goods, to the refrigerator, "perhaps 15 to 20 feet, not any more than that," from the dairy counter. Proceeding thence from where she then stood, "I was still watching the floor. Of course, I looked at it and the polish and I slipped as I went around the display of canned goods, my foot just went out from under me and I fell." Under cross-examination by counsel for both defendants then in the case, with respect to her proceeding across the floor notwithstanding the noticeably highly polished floor, she answered repeatedly that she had used care in doing so, that there was no thought of falling, "it was simply the thought that on a floor or any surface of that kind one walks with care." These answers were in response to questions by defendants' counsel manifestly designed to elicit facts with reference to her own conduct as it might affect her responsibility for her own safety under the circumstances, and she was entitled to have this evidence regarded by the court as true for the purpose of defendant's motion for a nonsuit, and she was entitled later to have such evidence weighed by the jury, along with other pertinent testimony, in the consideration of the question of contributory negligence.

Dorothy Davis testified that she was a customer of the store and was in it at the time of Mrs. Shipp's accident, though she had not seen her fall; that the condition of the floor in the store at that time was the same as she had seen it on her previous visit to the store about a week before, "or some days before that;" that on the occasion of her previous visits the floor was very slippery and highly polished; that she had told the manager the floor was very slippery and he should do something about it, otherwise there would likely be a lawsuit. "Having slipped myself was the reason that brought it to my attention. * * * Those are the words. I caught myself on an upright post they had there in the store."

Albert Clothier, Jr., testified that he was in the store when Mrs. Shipp fell and saw her "just a minute after she had gone down." He had been in the store several days prior to

the accident and observed the condition of the floor, "unusually slippery."

Marion Van Nest, the daughter of the plaintiff, who had accompanied her to the store, did not see her at the moment of the fall but was at her side shortly thereafter. She testified that the floor was highly polished and unusually slippery.

Thus we have a case where the uncontradicted testimony is that a woman, using care and caution, shopping in a store, is injured by slipping and falling on the floor, the condition of which is variously described by herself and several witnesses as "unusually slippery, more so than any I have ever seen before;" "highly polished;" "more highly polished than any other floor;" "it was very slippery. I watched my step;" that the condition had been called to the attention of the management previous to the accident in question, but apparently had not been remedied.

The defendant contends that, notwithstanding the proof above recited, any liability for negligence on the part of the store proprietor is negatived by the holdings of this court under the cases of *Kelly* v. *Loft, Inc.*, 124 *N. J. L.* 185; *Abt* v. *Leeds, Lippincott Co.*, 109 *Id.* 311, and *Garland* v. *Furst Store*, 93 *Id.* 127. It is not conceived that any of the cases cited is authority for the proposition that an owner or operator of store premises used by the public may with impunity maintain a floor in *such* a highly polished or slippery state as to constitute a danger to the patrons. Our decisions do not go so far as to remove all limits of degree as to the state of public floor space with respect to safety and liability. If there is a limit to the degree beyond which the situation would be dangerous, there is a limit beyond which there is a responsibility. This is indicated in the *Abt* v. *Leeds, Lippincott Co.* case, *supra*, where Mr. Justice Trenchard, speaking for the court, noted that "the full extent of the proof as to the condition" of the stairs was that they were "waxed, highly polished, and very slippery," and "it was insufficient to justify an inference of negligence," and went on to note further that there was no evidence to show that "the stairs had been left in any different condition than is usual in waxed or polished floors or stairs." The present

case is, under the proof therein, clearly distinguishable from that of *Abt* v. *Leeds, Lippincott Co.* in the last respect mentioned.

In *Kelly* v. *Loft, Inc., supra,* in which Mr. Justice Porter delivered the opinion of this court, "a nonsuit was sustained because of the lack of any evidence of any slipperiness of the linoleum which covered the floor or of any evidence that the method of construction under the circumstances rendered the floor unsafe or dangerous." The quoted language is from a later case in the Supreme Court, *Deschamps* v. *L. Bamberger & Co.,* 128 *N. J. L.* 527, in which reference is made to the *Kelly* v. *Loft, Inc.,* case and in which the opinion of the court was also delivered by Mr. Justice Porter. The case *sub judice* does not come within the confines of *Kelly* v. *Loft, Inc.*

*Garland* v. *Furst Store, supra,* is quoted by defendant in support of the rule that a mere fall of a person on the premises of another without any evidence to show how the fall was occasioned, raises no presumption of negligence on the part of the owner. Such undoubtedly is the rule, but we do not understand it to be challenged by the plaintiff in the present case. However, the case cited was one involving an alleged slippery floor, and it may be observed that Chancellor Walker, delivering the opinion, said therein (at *p.* 129) : "The floor was, undoubtedly, smooth, but, apparently, was not slippery, as it had been traversed by thousands of people every week the four years since its construction, and no one had ever been known to slip there before." In the present case the testimony was that the floor was *very* slippery, that another patron had slipped and avoided falling by getting hold of a post, still another patron had to watch his step not to fall, and the premises had been used but a few months instead of four years, as in the *Garland* case. Differentiation of fact proof in the case at bar and the case cited is manifest.

In view of the nature of the proof in this case concerning the extent of the condition of the floor of defendant's premises, from which it might be fairly concluded that it was beyond the scope of the ordinary condition of even polished

floors in such premises, the experience of not only the plaintiff, but other patrons of the store, with respect to traversing the floor under the same condition, the fact that by complaint notice had been previously brought home to the defendant, the state of the case at the close of the presentation of the plaintiff's evidence was such that the trial judge might not take away from the jury the question of whether or not the defendant was negligent and the question of proximate cause. He may not do this unless the inference to be drawn from the pertinent facts in evidence be such that fair minded men ought not to differ about them. *Deschamps* v. *L. Bamberger & Co., supra.* We do not think the prohibitive condition was present, and we conclude, therefore, that the trial judge committed no error in denying the motions for a nonsuit and directed verdict and leaving the question of negligence for the decision of the jury.

With respect to the matter of the alleged contributory negligence, we conclude, as has been hereinbefore indicated, that the plaintiff's conduct was, under the proof, a question for the jury, as to whether or not under all the circumstances she exercised reasonable care for her own safety. Her testimony is that her first view of the premises led her to fear they might be slippery. Until she used the floor and had the opportunity to test it by walking on it, there might be a reasonable difference of opinion as to what course to pursue in the interest of safety. The store was open to customers. She was there on a purchasing errand. Other people were in the store. Was it unreasonable for her to infer that despite the appearance of the floor it might still not be too dangerous to traverse? We think such a question is a proper one for a jury to resolve, and so far as her continuance from the first stop on to the second is concerned, she may well have pondered, in her state, whether to attempt to walk out of the store or proceed to finish her errand since she was in it. However, she walked a distance of some 15 feet to the counter at which she expected to purchase. She then found she had to proceed practically the same additional distance to accomplish her errand, and it was in that part of her progress that she fell. We do not think the plaintiff's con-

duct under the conditions was necessarily, as a matter of law, contributory negligence *per se.* It presented the common question of what the ordinarily prudent person in the given circumstances would do in the exercise of reasonable care for his or her own safety. *Solomon* v. *Finer,* 115 *N. J. L.* 404. This question was left to the jury by the trial judge, and correctly so. The motions for nonsuit and for direction of a verdict on that ground were properly denied.

The judgment will be affirmed.

Colie, J. (Dissenting.) The basis of the majority opinion is stated to be that "the nature of the proof in this case concerning the extent of the condition of the floor of defendant's premises, * * * was such that the trial judge might not take away from the jury the question of whether or not the defendant was negligent * * *." The plaintiff's case was based upon the floor being "highly polished," "unusually slippery," "very slippery." This court unanimously held in *Abt* v. *Leeds & Lippincott Co.,* 109 *N. J. L.* 311, that the fact that hotel steps were highly polished and very slippery would not justify an inference of negligence. The instant case is void of evidence which would afford the jury a standard of comparison. There was no offer of evidence of what constituted standard construction and in the absence of such evidence the jury had no gauge by which to determine whether or not the defendant owner had exercised reasonable care. The terms used to describe the floor are meaningless in the absence of knowledge as to what the witness had in mind as his or her standard of comparison. Such knowledge is lacking.

For the reasons stated, I vote to reverse. The Chancellor, Mr. Justice Case and Judge Wells desire me to state that they concur in this view.

*For affirmance*—The Chief Justice, Parker, Bodine, Donges, Heher, Perskie, Porter, Dear, Rafferty, Hague, Thompson, Dill, JJ. 12.

*For reversal*—The Chancellor, Case, Colie, Wells, JJ. 4.