## MEYONBERG v. PENNSYLVANIA R. CO.

### No. 9366.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 14, 1947.

Decided Dec. 19, 1947.

GOODRICH, Circuit Judge, dissenting.

———◆———

Edward W. Wise, Jr., of Red Bank, N.J., for appellant.

James R. Laird, of Trenton, N.J., for appellee.

Before ALBERT LEE STEPHENS, GOODRICH, and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

Plaintiff appeals from a "judgment of nonsuit" granted at the close of the presentation of his case. Plaintiff, the sole witness to testify, asserted that he was a passenger traveling from New York to Long Branch, N. J., on a train operated by defendant, a common carrier. Reading a newspaper, he was sitting in an aisle seat in the rear of the train.[1] Across the aisle were four men playing cards. Three other men, subsequently joining the game, stood in the aisle between the seat of plaintiff and those of the four card players. Occasionally, one of these three standing men, hereinafter called the injurer, would bend over. Each time the injurer did so, he struck the plaintiff. Plaintiff objected, but the injurer paid no attention to him. Eventually the train stopped at a station. "When the train started up again," according to plaintiff, "this man landed in my eye with his elbow." It is the injury to plaintiff's eye for which recovery is here sought.

Plaintiff further testified that the second of the two cardboards, on which cardboards the game was being played, had been supplied by a member of the train crew at about the same time as the three men joined the game; and that the trainman, walking through the car several times during the course of the game, had had to "brush up" against him to get through that particular part of the car.

The theory upon which the court granted the nonsuit was that the playing of cards is not inherently dangerous, and that, regardless of the degree of care required of defendant, the burden of proof that the injury arose out of the negligence of defendant's servants lay with plaintiff. The court said, "I don't think I can spell out and leave to conjecture on the part of the jury what caused the elbow to strike the man in the eye. It is up to the plaintiff to prove that and he has not done it."

▮ Jurisdiction in this case stems from diversity of citizenship. This being so, the substantive law to be applied is that of New Jersey, where the cause of action apparently arose.[2] Klaxon Co. v. Stentor, 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

---

[1] Plaintiff testified that the train was "very well crowded." Whether there were vacant seats at the time of the injury does not appear in the record. We note, however, that the train had stopped at least at one station.

[2] At the trial in the court below, no evidence was introduced as to where the

We shall treat the motion for a nonsuit and the "judgment of nonsuit" as a motion for a directed verdict and a judgment entered upon a directed verdict, respectively, in accordance with Rule 50(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. See Schad v. Twentieth Century-Fox Film Corporation, 3 Cir., 1943, 136 F.2d 991, 993. As was stated in the Schad case, "Upon a motion by the defendant for a directed verdict at the close of the plaintiff's evidence it becomes the duty of the trial judge, after viewing the evidence and all inferences reasonably to be drawn therefrom in the light most favorable to the plaintiff, to determine whether, as a matter of law, his evidence makes out a case upon which the law will afford relief." 136 F.2d at page 993.

Two questions, then, are presented: (1) Could the court below hold as a matter of law that plaintiff had not introduced evidence from which a jury might reasonably determine what caused the injurer's elbow to strike plaintiff in the eye? and (2) if plaintiff did meet the burden of proof as to the cause of the injury, was there a jury question whether defendant had failed to meet the standard of care defendant owed to plaintiff?

We believe that, in deeming conjectural what caused injurer's elbow to strike plaintiff's eye, the court below inadvertently overlooked the testimony of plaintiff that he was struck "when the train started up again." On the basis of that statement alone, a jury might reasonably have inferred that it was the starting of the train which led to the injury. See Dickinson v. Erie R. Co., 1914, 85 N.J.L. 586, 588, 90 A. 305, in which the court reiterated the principle that, to warrant a nonsuit or a directed verdict, something more than the mere weight of the evidence must be involved; and cf. Deschamps v. L. Bamberger & Co., 1942, 128 N.J.L. 527, 529, 27 A.2d 3, 4, and Shipp v. Thirty-Second

Street Corporation, 1943, 130 N.J.L. 518, 523, 33 A.2d 852, 854.

There is no evidence that, on this particular occasion, the starting of the train was performed negligently. To prevail, therefore, plaintiff had to establish that a jury could have found defendant negligent, under all the circumstances, for the failure of defendant's agent to protect plaintiff adequately against the risk of being injured by the standing card players.

Section 348 of the Restatement of the Law of Torts provides, inter alia, that a public utility is liable to members of the public for bodily harm caused them by accidental or negligent acts of third persons, if the public utility by the exercise of reasonable care could have (a) discovered that such acts were about to be done and (b) protected the members of the public by controlling the conduct of the third persons or giving a warning adequate to enable avoidance of the harm. Applying this principle to the case sub judice, we note that a jury could have reasonably found that the accidental (or negligent) act of the injurer was foreseeable by the trainman. Not unfamiliar with the fact that trains when set in motion will often jerk, as a result of which irregular motion an individual standing in the aisle might well be thrown off balance, the trainman could reasonably have been found negligent by a jury for his failure to order the standing card players to take seats or otherwise to eliminate the possibility that they would be thrown against nearby passengers such as the plaintiff. If New Jersey law is in substantial agreement with Section 348 of the Restatement of the Law of Torts, we believe it necessarily follows that plaintiff had the right to a jury determination whether the facts established a violation of defendant's duty to him.

The New Jersey Annotations to the Restatement of the Law of Torts state that New Jersey courts are "substantially in accord" with Section 348. Our analysis of

---

alleged injury occurred. We do know, however, that the train had stopped at a station subsequent to its departure from Pennsylvania Station in New York, N. Y., from which it may be inferred that

the train was travelling in New Jersey at the time. Both litigants have argued the case on the theory that New Jersey substantive law is controlling.

the pertinent New Jersey decisions leads us to agree with that statement.

New Jersey lays upon a common carrier the duty of using a "high degree of care" for the safety of the carrier's passengers. See Spalt v. Eaton, 1937, 118 N.J. L. 327, 330, 192 A. 576, 578, and cases cited therein, affirmed 1938, 199 N.J.L. 343, 196 A. 736; and see Kinsey v. Hudson & Manhattan R. Co., 1943, 130 N.J.L. 285, 288, 32 A.2d 497, 498, affirmed 1944, 131 N.J.L. 161, 35 A.2d 888. This "high degree of care" was interpreted to mean "a degree of care commensurate with the risk of danger," in New Jersey Fidelity, etc., Ins. Co. v. Lehigh Valley R. Co., 1918, 92 N.J. L. 467, 470, 105 A. 206, 207, certiorari denied 1919, 249 U.S. 600, 39 S.Ct. 258, 63 L. Ed. 796; see also Nazarro v. Hudson & Manhattan R. Co., 1940, 125 N.J.L. 108, 111, 14 A.2d 521, 523, affirmed 1941, 125 N.J.L. 509, 17 A.2d 173. With these principles in mind, we need not inquire whether there is any inherent danger in card playing which is unaccompanied by other factors; but rather we direct our analysis to whether there was a demonstrable risk created by three individuals playing cards while standing in the aisle and whose attention was so diverted as to raise substantial doubt whether, in the event that the train swayed or jerked, they would exercise due care to avoid physical contact with passengers in the vicinity. We are not prepared to say as a matter of law that no such risk existed, nor that a trainman aware of the game and compelled to inch his way through the congested area did not have reasonable notice of that risk to the plaintiff. "The rule supported by authority is that when a passenger shows that he was injured * * * through some act or omission of the carrier's servant, which might have been prevented by due care, then the jury have the right to infer negligence, unless the carrier proves that due care was exercised." Whalen v. Consolidated Traction Co., 1898, 61 N.J.L. 606, 609, 40 A. 645, 646, 41 L.R.A. 836, 68 Am.St.Rep. 723, quoted in Spalt v. Eaton, supra, and see Falzarano v. Delaware L. & W. R. Co., 1937, 119 N.J.L. 76, 82, 83, 194 A. 75, 78, 79. On its facts, the case at bar would appear to be no less strong than the Kinsey case, supra, in which the trier of the facts was permitted to decide whether an unprovoked assault on a passenger by an intoxicated fellow passenger subjected the carrier to liability, even though the carrier's employee did not witness the incident and may not even have seen the assailant enter the train. In the course of its opinion, the court which decided the Kinsey case cited Miller v. West Jersey etc. R. Co., 1904, 71 N.J.L. 363, 59 A. 13, a case on which defendant has relied strongly, as standing for the principle that the carrier would be liable if the specific tortious act was preceded by something which suggested the likelihood, or at least the possibility, of its taking place.[3] Likewise, the Kinsey case distinguished as inapposite Kalleberg v. Raritan River R. Co., 1917, 91 N.J.L. 222, 102 A. 350, and Seckler v. Pennsylvania R. Co., 1934, 113 N.J.L. 299, 174 A. 501, the other cases which defendant asserts are in support of the judgment of the court below. We are impelled to the conclusion that foreseeability is left by New Jersey courts to the fact-finding body unless, as was the situation in Hoff v. Public Service R. Co., 1918, 91 N.J.L. 641, 103 A. 209, 211, 15 A.L.R. 860, "nothing took place to indicate to any one that the plaintiff was in danger." In the case at bar, we deem untenable any argument that, as a

[3] At the first trial of the Miller case, the verdict was in favor of the plaintiff. On the appeal cited above, 1904, 71 N.J.L. 363, 59 A. 13, a rule to show cause was made absolute, on the ground that there was nothing to suggest the possibility of danger to the plaintiff. Subsequently the plaintiff was allowed to amend his declaration so as to count upon the negligence of defendant in failing to protect him from the conduct of employees of another railroad. Defendant made a motion to vacate the order permitting amendment of the declaration. Defendant's motion was denied; 1908, 76 N.J.L. 282, 70 A. 175. Defendant then demurred to the amended declaration. In a brief per curiam opinion containing language apropos to the case at bar, the New Jersey Supreme Court overruled the demurrer. 1909, 71 A. 1113. On the trial which ensued, plaintiff was nonsuited for failure to prove the facts alleged in his declaration, and the judgment was affirmed on appeal. 1910, 79 N.J.L. 499, 76 A. 973.

matter of law, a trainman could not reasonably have anticipated that an injury like that concerning which plaintiff testified might result from permitting the standing card players to remain where they were on the moving train. Cf. Hansen v. North Jersey St. Ry. Co., 1900, 64 N.J.L. 686, 696, 697, 46 A. 718, 721; and cf. Lillie v. Thompson, 68 S.Ct. 140.

We conclude, therefore, that the judgment of the court below must be reversed and the cause remanded for a new trial.

GOODRICH, Circuit Judge (dissenting).

There is no quarrel with the majority opinion upon the propositions of law cited. It is granted that a public utility has an affirmative duty to take reasonable care to protect its business guests from harm. But that does not make the utility an insurer of the safety of its guests which it is submitted the majority comes pretty close to doing in this case. This dissent is based upon disagreement with the majority concerning the application of the general rule of law to the facts here.

Certainly the ordinary social card game is not an occupation fraught with physical danger to others, whatever pecuniary risks may be involved for the participants. There is no charge in this case that the conduct of the card players previous to the alleged accident was boisterous or otherwise disorderly, except for the fact that one of them in bending over, had touched or bumped the plaintiff. There is no statement that any railroad employees saw this touching. The plaintiff evidently did not think the danger important enough to protest to any member of the train crew. Even if the card players had been engaged in disorder, this would not be enough to charge responsibility for that disorder to the defendant unless the latter had reasonable means of knowing of it so that suitable precautions could be taken. Out of these facts here it seems to me that there is nothing to give notice to the defendant of any possible source of danger to other passengers from the activities of these card players. There being no indication of danger, there is no negligence in failing to provide protection. One is not charged to take precautions against things which, in the exercise of reasonable care, he has no way of knowing exist.

The rule applied by the majority would seem to make a carrier responsible for any bumps suffered by sitting passengers from those standing in aisles. In other words, allowing people to stand in the aisle becomes liability creating conduct; at any rate, unless the train crew can ascertain constantly that the standing passengers are giving full attention to the maintaining of their equilibrium upon starts and stops. I do not suggest that the majority opinion would espouse such a doctrine as a matter of law, but it seems to me the practical effect of the ruling in this particular set of facts. I think the judgment of the District Court was correct and should be affirmed.